## JAMES DAVID CARTER, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Sept. 4, 1969.

Certiorari Denied by Supreme Court Nov. 3, 1969.

546

James M. Davis, Morristown, for plaintiff in error.

George F. McCanless, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, Heiskell H. Winstead, Dist. Atty. Gen., Rogersville, for defendant in error.

## OPINION

RUSSELL, Judge.

James David Carter, the plaintiff-in-error, was jointly indicted with Gene Johnson and Bobby Ray Wilder, and charged with third degree burglary upon the premises of Gibson's Discount Center. Carter was also indicted alone in a three count indictment charging first degree burglary, grand larceny, and receiving and concealing stolen property; these charges arising out of the alleged theft of a television set from the residence of Parley Young. Both of these cases against Carter were tried before the same jury and are now before us for determination upon one record. Wilder and Johnson entered guilty pleas, but were not tried with Carter.

Carter, hereinafter called the defendant, was convicted of burglary in the third degree and sentenced to not more nor less than three years for his part in the Gibson's burglary; and was convicted of burglary in the first degree and grand larceny in connection with the alleged theft of Parley Young's television set, the jury setting a maximum sentence of ten years on each count; the Court sentencing defendant to not less than five (5) nor more than ten (10) years in the penitentiary for the burglary and not less than three (3) nor more than ten (10) years for the grand larceny, but merged the sentences "as one maximum sentence of not more than ten (10) years," to run consecutively with the three year sentence pronounced for the third degree burglary.

■ The admissibility of defendant's confession is challenged. The circumstances were that Wilder and

Johnson were caught by police officers inside Gibson's in the act of committing burglary in the early morning hours of August 8, 1968, and were kept in custody thereafter. The defendant was not caught until August 19, 1968, when he was jailed. He was there interrogated by Police Captain Franklin, in the presence of Officer Lamb, but not before he had been presented with and was permitted to read and then signed the following paper (Exhibit 2):

## YOUR RIGHTS

Place: Hamblen County Jail
            Morristown, Tennessee

Date: August 19, 1968

Time: 7:15 P.M.

Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in Court. You have the right to talk to a lawyer for advice before we ask you any questions, and have him with you during questioning. You have the right to the advice and presence of a lawyer during this or any subsequent interrogation even if you cannot afford to hire one. If you wish to answer questions now without a lawyer present, you have the right to stop answering at any time until you talk to a lawyer.

## WAIVER

I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know what I am do-

ing. No promises or threats have been made to me and no pressure of any kind has been used against me.

Signed (s) James Carter
James David Carter
WM24
516 E. 4th North City

Witness (s) Keith Franklin
Witness (s) K. L. Lamb
Time 7:25 P.M.

Read by above

Note that ten minutes is shown to have passed between the time on the caption and the bottom endorsement. The defendant appeared to read the form, was literate, presumably could have hired counsel as he is now represented by employed counsel; and most, significantly, did not confess at that time, or ever, to the Gibson's burglary, which was the subject of inquiry at that time.

After defendant would not confess, but denied any guilt, Wilder and Johnson were brought in and statements which they had made implicating defendant were read, and also repeated extemporaneously. The defendant still denied his guilt; but, under the State's proof, accredited by the Court and jury, he told Wilder and Johnson that "they knew what happened to rats," had to be physically restrained from striking Johnson, and stated that he'd get them later.

Three days later, on August 22, 1968, the defendant was taken to a room in the Municipal Building to be questioned by Captain Franklin and Officer Sexton about

the burglary on July 17, 1968, in which a T.V. set was stolen. Presumably the officers now had reason to consider him to be a suspect in that case. Present also were Wilder and one Carpenter, who had bought the T.V. A form exactly like the one hereinabove set out was presented to defendant, except for appropriate changes as to time and place, and after reading same "or about all the way through it" the defendant signed it. The form (Exhibit 1) shows an elapsed time of 22 minutes from its caption to its endorsement, and it consists of only two paragraphs. Thereafter, the defendant stated that he "didn't want to involve any other parties in this" and told, *without* questioning, about the taking of the T.V. His confession was reduced to writing, signed and was introduced upon the trial. (Exhibit 3.)

Only two things prevent this advice of rights and waiver from being letter perfect. One, it does not contain a specific recital that if he cannot afford a lawyer that one will be appointed for him; though it does tell him that he has a right to have one even if he cannot afford to hire one. Since he is not indigent, we do not feel that this renders his confession inadmissible.

The second problem with the procedure is that the officer admitted that he did not read the statement of rights to the defendant, but let him read the statement himself. Three days previously he had read and signed such a "rights waiver" and on this occasion the officer is not sure that he read it all. However, he had it for 22 minutes, appeared to read it "or about all the way through it" and then voluntarily signed the written waiver.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16

L.Ed.2d 694, holds that "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." Again, the U. S. Supreme Court said in *Miranda* that: "At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms * * *." The Court uses "apprised" and "informed" and "warn" and "warnings given" in referring to the process of advising defendants of their rights. Nowhere have we noticed a requirement that the advice be exclusively oral.

*Miranda* expressly places the burden upon the State to prove the warnings and waiver of rights, saying also "an express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver." Here, we have the statement of rights in writing, followed by an express waiver in writing. A written waiver executed by one who is literate is certainly more persuasive that he did know and waive his rights than testimony of witnesses as to an oral one, and we feel is more effective in protecting the rights of the subject under interrogation. And what could offer more assurance that all one's rights had been fully explained to him than to have the explanation given in writing on the same paper on which he signed an express waiver? One who can read is much more likely to understand what he has himself read than he can what is merely read to him.

So even if this confession is deemed to have resulted from interrogation, we feel that both the letter and the spirit of the law, as declared in Miranda v. Arizona, *supra,* have been complied with. Further, the de-

fendant testified to taking the T.V. set and disposing of it to Carpenter, his theory being that the owner author-ized it. This the owner denied and the jury and judge believed him. Defendant's conviction is supported, there-fore, by convincing proof, including his own testimony (on all except motive), outside of the confession. In the first degree burglary and grand larceny case, involving the theft of the T.V., (which is the only case in which a confession is involved), the assignment of error as to the admission of defendant's confession is overruled.

Error is assigned in the Gibson's burglary case on the proposition that corroboration of the testimony of Wilder, the accomplice, is insufficient in law to support the conviction.

A careful study of the record shows sufficient corroboration. The defendant, upon confronting his confessing accomplices, exclaimed that "they knew what happened to rats"; tried to strike one of them, and said that he would get them later. Anger at a false accusation could be just as natural as anger over a true one; but the language used is incriminating. The Court can take judicial notice of the use of the term "rat" by the lawless element. Facts which are universally known, and which may be found in encyclopedias, dictionaries or other publications, are judicially noticed, provided they are of such universal notoriety and so generally understood that they may be regarded as forming part of the com-mon knowledge of every person. Milstead v. Kaylor, 186 Tenn. 642, 212 S.W.2d 610. Webster's Collegiate Dic-tionary, Fifth Edition, states that "to play the rat: spe-cifically, to forsake one's associates for one's own ad-vantage." And in Webster's New World Dictionary,

College Edition (1966) two pertinent definitions of the verb, "rat," are: "(a) to desert one's companions, especially one's fellow workers, as rats are reputed to desert a sinking ship; (b) to act as a stool pigeon."

Defendant's guilt is corroborated by the fact that the very day of the burglary he took his wife camping and stayed eleven days, being arrested immediately upon his return. On cross examination he denied that he had been running; and said that if he had been running that "I'd be camping out today." He obviously associated running with camping out.

He admits letting Wilder and Johnson out in the area of the burglarized store, on the same road, at midnight, without any logical explanation. He admits riding them around in his car for many hours that night, which is when Wilder said the burglary was planned. Undoubtedly a tire tool used in the burglary was hauled in his car, and it is illogical to think that he didn't know it. A disinterested witness saw the three of them together at Wilder's residence at 9:00 P.M., when according to Wilder the tire tool was gotten from Wilder's car.

We feel that this evidence sufficiently satisfies the requirements that there should be some fact testified to entirely independent of the accomplices' testimony, which taken by itself leads to the inference, not only that a crime has been committed, but that the defendant is implicated in it, and consist of some fact that affects the identity of the party accused. State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460.

Error is cited upon the argument of the District Attorney General. We do not find this argument to be prejudicially erroneous.

Other assignments of error go to the weight of the evidence. Suffice it to say that the evidence does not preponderate against the guilt and in favor of the innocence of the defendant on either of these charges, so these assignments are overruled.

■ We feel that the judgment of the trial court in Case No. 3921 must be modified. The defendant was convicted of burglary in the first degree under the first count of the indictment, and grand larceny under the second count. In each instance the jury set a maximum punishment of ten (10) years. The trial court sentenced him to 3 to 10 years for grand larceny and 5 to 10 years for first degree burglary, saying the sentences "will merge * * * as one maximum sentence of not more than ten (10) years."

The judgment does not set the minimum, which must always be done in the case of an indeterminate sentence. McCullough v. State, 216 Tenn. 513, 392 S.W.2d 954. But the error is in holding the defendant convicted of both burglary and grand larceny. The theft was the felony that, in this instance, he unlawfully broke and entered intending to commit. It was all one crime, one transaction growing out of one criminal intent. The burglary conviction, under these facts, necessarily included the grand larceny, and there could be no valid conviction under both these counts. The case of Cronan v. State, 113 Tenn. 539, 82 S.W. 477, resulted in a conviction of felonious breaking and entering under the first count, and petit larceny under the second. The Court held that he could have been convicted of either, but not both. The Court said that under the first count, the crime averred in the second would be included. The

Court modified the judgment so as to release the defendant below of the judgment on the verdict as to petit larceny.

To the same effect, on a different set of charges, is Patmore v. State, 152 Tenn. 281, 277 S.W. 892. See also Davis, alias Hennessy v. State, 85 Tenn. 522, 526, 3 S.W. 348, 350; and Reinhart v. State, 193 Tenn. 15, 18, 241 S.W.2d 854.

Under these circumstances, we are obligated to make the proper correction, and render such judgment as the trial court should have rendered. Cronan v. State, *supra*. Cowan v. State, 117 Tenn. 247, 96 S.W. 973.

Let the judgment in Case No. 3921 be modified to show a conviction only of burglary in the first degree, and a penitentiary sentence of not less than five (5) nor more than ten (10) years, consecutive to Case No. 3920; and, as so modified it and Case No. 3920 are affirmed.

OLIVER and DWYER, JJ., concur.