STATE of Tennessee, Petitioner,

v.

John Edward BLACK, Respondent.

Supreme Court of Tennessee.

June 16, 1975.

John B. Hagler, Jr., Asst. Atty. Gen., R. A. Ashley, Atty. Gen., Nashville, for petitioner.

J. Fred Friedman, Memphis, for respondent.

## OPINION

HARBISON, Justice.

Respondent John Edward Black was convicted in the Criminal Court of Shelby County, Tennessee of robbery by the use of a deadly weapon and of assault with intent to commit murder in the second degree. The Court of Criminal Appeals affirmed the conviction for robbery, but the majority of that Court reversed the conviction of assault with intent to commit murder. The majority opinion was to the effect that this second conviction could not stand in light of

the ruling of this Court in *Acres v. State*, 484 S.W.2d 534 (Tenn.1972). The dissenting member of the Court felt that the case was controlled by *Duchac v. State*, 505 S.W.2d 237 (Tenn.1973), and that the convictions for both offenses should be affirmed.

Because in this and in several other recent cases the apparent conflict between the two decisions of this Court cited above has been emphasized, we have granted the petition for certiorari filed by the State in order to deal with the issue of convictions for multiple offenses in a single trial.

Although there were disputed issues of fact in the courts below, for purposes of our review the facts established by the record show that the respondent and two companions on the night of February 8, 1971 robbed Talmadge B. Whitehorn at gunpoint as he was leaving the Tijuana Lounge in Memphis. After taking a considerable sum of money, a watch and a ring from Whitehorn, respondent stepped back and shot the victim in the leg from a distance of about 12 to 18 inches away. The robbery had clearly been completed prior to the infliction of this wound.

The issue before the Court is whether these acts committed at the same time and as part of a single episode constitute a single offense or whether convictions may stand both for armed robbery and assault with intent to commit murder.

The problem presented here is actually one of identity of offenses, which is one facet of the broader subject of double jeopardy. There are numerous reported cases in this state on the general subject of former jeopardy, arising in many different contexts, and containing language which in some instances seems conflicting and difficult to reconcile. The issue presented here, as we view it, is one of identity of offenses, as stated previously, but the issue has frequently arisen not only in cases involving single trials but also in the context of successive prosecutions for offenses committed at approximately the same time, and in the context of prosecutions for offenses of a continuing nature, such as unlawful cohabitation and the like. Some aspect of double jeopardy may arise in many different types of cases, and the circumstances which give rise to the question are so varied and the fact situations so numerous that we do not deem it expedient to attempt to formulate a rule to fit all possible situations. The cases, from their nature, have to be dealt with by analysis of the particular situations as they arise. Nevertheless, some review of the holdings in the *Acres* and *Duchac* cases, and the authorities upon which they were based, seems appropriate here.

In the case of *Acres v. State*, 484 S.W.2d 534 (Tenn.1972), the defendant was indicted for murder in the first degree of one Charles C. Wilder, and also for armed robbery of the same individual. Defendant and another individual had escaped from the Eastern State Hospital and were hitchhiking when they were picked up by the victim.. They commandeered his automobile at gunpoint, and one of them shot the victim, who died the next day. They also robbed the victim, but from the statement of facts contained in the opinion, it is not possible to ascertain whether the robbery occurred in the course of, before or after the shooting.

This Court, in considering the question of whether or not two separate convictions could be allowed to stand, said:

> "There is no doubt that these two offenses were committed at the same time and were parts of a single continuing act inspired by the same criminal intent essential to each offense, and were susceptible to but one punishment, and conviction of one is a bar to conviction of the other . . ." 484 S.W.2d 537.

But the Court also stated:

> "The acts of murder and robbery are inseparable. It is only because the murder was in the course of robbery that it was first degree. If the murder had been

without intent of robbery it would have been a lesser degree, because the element of intent that makes it first degree is the intent to rob." *Ibid.*

The statements last quoted seemingly have reference to the provisions of T.C.A. § 39–2402, generally known as the "felony-murder" rule.

■ Although the indictment charged first degree murder in the common law form of averments, it is well settled in this state that under such an indictment proof is admissible that the defendant was in the perpetration of a felony when the homicide occurred. *Sullivan v. State,* 173 Tenn. 475, 121 S.W.2d 535 (1938).

Several members of the Court of Criminal Appeals have construed the *Acres* case as an example of the felony-murder rule, and, if considered in that light and confined to the felony-murder principle, the case appears to have been properly decided and is not inconsistent with the holding in *Duchac,* hereinafter discussed.

In support of the material first quoted above, however, the court cited a number of other Tennessee cases, which did not involve the felony-murder principle. Cited was the case of *Cronan v. State,* 113 Tenn. 539, 82 S.W. 477 (1904), in which the Court had held that separate convictions of burglary and larceny, growing out of the same act, could not stand. In that case the Court said:

"It is true that the defendant below might have been convicted under the indictment as framed there for feloniously breaking and entering the house referred to or for larceny. Judgment, however, could not be entered against him for both. On a conviction under the first count the crime averred in the second would be included." 113 Tenn. at 542, 82 S.W. at 478.

■ The *Cronan* case, therefore, simply involved the issue of a lesser included offense and the familiar principle that one convicted of the higher charge could not also be convicted of a less serious but included offense. See T.C.A. §§ 40–2518, 2520; *Strader v. State,* 210 Tenn. 669, 362 S.W.2d 224 (1962).[1]

Also cited and relied upon in the *Acres* case was *State v. Covington,* 142 Tenn. 659, 222 S.W. 1 (1920). In that case the defendant had been tried and acquitted upon a charge of illegal transportation of intoxicating beverages into and within the state. Thereafter the defendant was indicted for unlawfully receiving intoxicating liquors and unlawfully being in possession of them. To the second indictment the defendant interposed a plea of former acquittal, alleging therein that the offense for which he had been acquitted was "the identical offense" as the one subsequently being charged, and rested on "the identical facts" upon which the second indictment was based. The State moved to strike this plea, thereby admitting the truth of the factual allegations contained therein, and both the trial court and this Court held under those circumstances that the plea was well taken. The Court said:

"The plea, which must be taken as true, says that this was one transaction, so that if the state were permitted to split this one transaction into three parts and charge the defendant with receiving in one indictment—possessing in the second, and transporting in the third—and the defendant should be found guilty in each case, then the court could impose a fine of $500, and an imprisonment of six months in each case. While the statute only contemplated a maximum fine of $500, and an imprisonment of six months for the entire transaction." 142 Tenn. at 662, 222 S.W. at 2.

1. Accord: *Brumley v. State,* 4 Tenn.Cr.App. 606, 475 S.W.2d 180 (1971); *Carter v. State,* 1 Tenn.Cr.App. 545, 447 S.W.2d 115 (1969).

It is apparent that that case did not present the same situation as was presented in either the *Acres* or *Duchac* cases, or as is presented in the present case—that is, a conviction for multiple offenses in a single trial. The case did involve a principle of double jeopardy, which the Court, in quoting from 16 C.J. 272, stated as follows:

" 'There is also another rule which declares that, if the prosecution under the second indictment involves the same transaction which was referred to in the former indictment, and it was or properly might have been, the subject of investigation under that indictment, an acquittal or a conviction under the former indictment would be a bar to a prosecution under the last indictment. This rule is sometimes called the "same transaction test." ' " 142 Tenn. at 663, 222 S.W. at 2.

Also cited and relied upon in *Acres* was the case of *Patmore v. State*, 152 Tenn. 281, 277 S.W. 892 (1925). The defendant in that case was convicted under an indictment with two counts charging possession of a still and also the unlawful manufacture of whiskey. The Court stated that under some circumstances where it was clear that the two offenses were wholly separate and distinct, it would be proper to have two convictions and two punishments. The Court stated, however:

"Our own cases appear to prohibit the practice where the offenses grow out of one transaction and involve but one criminal intent." 152 Tenn. at 284, 277 S.W. at 893.

The Court held that the two offenses in that case did grow out of the same transaction and that evidence of the manufacturing afforded proof of the possession. Accordingly the Court permitted only the higher of the two sentences to stand.

Probably one of the leading cases in Tennessee on the entire subject, and one which was cited in the *Acres* case, is the case of *Dowdy v. State*, 158 Tenn. 364, 13 S.W.2d 794 (1928). Defendant in that case was convicted for public drunkenness, and subsequently was indicted for driving an automobile on the public highway while intoxicated. To the latter charge, he filed a plea of former conviction, alleging that the prior indictment was "based upon the identical facts, and dependent upon the same transaction as that on which the present indictment depends."

This Court, reversing the trial court, held that the two convictions could not stand under those circumstances. The Court said:

"General rules deducible from principle and authority appear to be:

"1. Where two or more offenses of the same nature are by statute carved out of the same transaction, and are properly the subject of a single investigation, an acquittal or conviction for one of the several offenses bars subsequent prosecution for the others.

"2. When the facts constitute but one offense, though it may be susceptible of division into parts, as for stealing several articles from the same person at the same time, conviction for stealing one of the articles will bar subsequent prosecution for stealing the others.

"3. When the facts constitute two or more offenses, wherein the lesser offense is necessarily involved in the greater . . . and when the facts necessary to convict on a second prosecution would necessarily have convicted on the first, then the first prosecution to a final judgment will be a bar to the second.

"4. But when the same facts constitute two or more offenses, wherein the lesser offense is not necessarily involved in the greater, and when the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second, although the offenses were both committed at the same time and by the same act." 158 Tenn. at 366, 13 S.W.2d at 794.

The Court noted that great difficulty had been experienced by the courts in applying the first and the fourth of these rules, and cited extreme views which have been taken by courts in other jurisdictions. The Court then said:

"But the courts of this state, observing the spirit and the letter of the law . . hold that acquittal or conviction in one of several related offenses resulting from the same transaction bars subsequent prosecution for the others . . .

"It may be observed from a review of foregoing cases that the rule does not extend to unrelated substantive offenses arising out of the same transaction. The distinction is made in *State v. Ross* (72 Tenn. 442 (1880)), where it was held that conviction for disturbing public worship by shooting a pistol in a church did not bar a subsequent prosecution for assault with intent to commit murder by the act of shooting." 158 Tenn. at 367–368, 13 S.W.2d at 795.

The rules formulated in the *Dowdy* case have been cited and applied by the courts of this state in many subsequent cases. In the case of *English v. State*, 219 Tenn. 568, 411 S.W.2d 702 (1966), which was also cited in *Acres*, the defendants had been convicted of larceny from the person of a victim. They were simultaneously convicted for gaming. The conduct of the defendants was to force their victim to play cards for money and to remove money from his billfold to make bets. The Court held that the gaming conviction could not stand. It said:

"Here, plainly there is one set of facts. These fellows were standing around in this place playing cards and while doing so they manage to steal this money from the prosecutor, and this is all that there is in this record to show that it was a gaming house or anything of the kind to violate any of the statutes with reference to gaming as above set out. It seems to us that the same acts are pyramided here

to make two offenses." 219 Tenn. at 578–579, 411 S.W.2d at 707.

Quoting from the *Dowdy* case, the Court said:

" 'The transaction was the same; the witnesses were the same. Both acts could have been presented in a single indictment of two counts, and, if it had been done, under our authorities there could have been but one punishment.' " 219 Tenn. at 579, 411 S.W.2d at 707.

The Court accordingly held that under these particular circumstances the conviction for gaming could not stand.

In the course of its opinion, however, in the *English* case, the Court said:

"Of course, in each of these cases it is necessary for the Court to carefully consider the facts of each particular case as to whether or not the conviction of one offense is a bar to the conviction for what is charged in the other." 219 Tenn. at 578, 411 S.W.2d at 707.

Another case relied upon in *Acres* is *Walton v. State*, 1 Tenn.Cr.App. 668, 448 S.W.2d 690 (1969), in which the defendants were convicted of assault and battery with intent to rape and also of burglary with intent to rape. Under the particular facts of that case, the Court reversed the latter conviction stating:

"We have considered carefully the facts of the two cases now before us, and we feel that the conviction of one is a bar to the conviction of the other. We find that these offenses were committed at the same time and are parts of a single continuing criminal act, inspired by the same criminal intent which is essential to each offense, and that they are susceptible to but one punishment." 1 Tenn.Cr. App. at 680–681, 448 S.W.2d at 696.

The Court cited but distinguished the case of *Harris v. State*, 206 Tenn. 276, 332 S.W.2d 675 (1960), which was later relied upon by this Court in its opinion in the

Duchac case, *infra*. In the *Harris* case, the defendant broke into the home of an elderly woman in the middle of the night looking for money. Later he formed an intent to commit rape and attempted to do so. He was prosecuted and convicted for the offense of burglary, and in a second prosecution was tried and convicted of assault and battery with intent to commit rape. This Court permitted both convictions to stand, despite a double jeopardy challenge, quoting from Underhill, *Criminal Evidence* (3rd ed.), §§ 315–318, as follows:

> " '* * * if the same acts constitute two different crimes, conviction of one is not a bar to conviction of the other * * The identity of the former offense with the one charged depends on whether the defendant was put in jeopardy for the identical crime and not whether the defendant had been tried for the same act.' " 206 Tenn. at 286, 332 S.W.2d at 680.

It was the latter principle which was emphasized by the Court in the case of *Duchac v. State*, 505 S.W.2d 237 (1973). In that case defendants were jointly tried on two separate indictments. They were convicted of third degree burglary and also of carrying burglarious instruments. Analyzing the statutory definitions of the two offenses, this Court held that there were two separate offenses committed, and that different proof was required to establish them. It accordingly sustained both convictions under the particular facts and circumstances of that case. In the course of its opinion, the Court stated that the defendants contended that the two convictions could not stand because they "arose out of the same transaction and because the same proof made out both offenses." Responding to this contention the Court said:

> "However, the majority rule and clearly the rule in Tennessee is that the 'same transaction' test is not the law, rather the proper test is directed to the identity of the offense and has been called the 'same

evidence' test. *See e. g. Harris v. State*, 206 Tenn. 276, 332 S.W.2d 675 (1960); *Eager v. State*, 205 Tenn. 156, 325 S.W.2d 815 (1959). Simply stated the test is that:

> " ' . . . A defendant has been in jeopardy if on the first charge he could have been convicted of the offense charged in the second proceeding.

> " 'One test of identity of offenses is whether the same evidence is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes. 'If there was one act, one intent and one volition, and the defendant has been tried on a charge based on that act, intent, and volition, no subsequent charge can be based thereon, but there is no identity of offenses if on the trial of one offense proof of some fact is required that is not necessary to be proved in the trial of the other, although some of the same acts may necessarily be proved in the trial of each.' 21 Am.Jur.2d, Criminal Law, § 82." 505 S.W.2d at 239.

Cited in the *Duchac* opinion was the case of *Eager v. State*, 205 Tenn. 156, 325 S.W.2d 815 (1959), wherein it was held that an acquittal of failure to stop an automobile after an accident did not subsequently bar a prosecution of the defendants for involuntary manslaughter of a pedestrian struck by their automobile.

In the course of the *Eager* opinion, the Court said:

> "The question which has been considered by the Courts under such situations, and the Courts have concluded, is that the offenses are not the same if upon the trial of one, proof of an additional fact is required, which is not necessary to be proved in the trial of the other although some of the same acts may be necessary to be proved in the trial of

each. In other words it seems that the double jeopardy proposition is directed to the identify of the offense and not to the act." 205 Tenn. at 165–166, 325 S.W.2d at 820.

It is admittedly difficult to reconcile the language and the holdings of all of the foregoing cases, some of which arose out of successive prosecutions, and others out of multiple indictments or multi-count indictments.

It is the opinion of this Court, however, that the principles formulated in the *Dowdy* case, *supra,* and reaffirmed in the *Duchac* case are correct. We do not find it necessary to overrule the *Acres* case, but we are not inclined to extend its application. As previously pointed out, if it be regarded simply as a "felony-murder" case, the conclusion reached may be considered correct, but some of the statements contained in *Acres* cannot be reconciled with the cases which were cited in that opinion. Indeed, the portion of the opinion referring to a "single continuing act" appears to be dictum and wholly unnecessary to the decision in light of the felony-murder principle.

■ It is also somewhat difficult to agree with the actual result reached in the *Duchac* case, because ordinarily the offense of carrying burglarious instruments would be a lesser included offense to the charge of burglary. This was recognized by the Court in the *Duchac* case, however, when the Court stated, after analyzing the statutory definitions of the two offenses involved:

"In addition, none of the evidence required to prove carrying burglarious instruments is necessary to prove commission of third degree burglary. Therefore, the mere fact that both offenses grew out of a single criminal episode does not make them a single offense in this particular case. This is not to say that under different facts and circumstances that a third degree burglary conviction could

not bar a conviction for carrying burglarious instruments. The peculiar facts of each case must be examined to properly ascertain whether the conviction of one would bar the other." 505 S.W.2d at 240.

■ We do not find the formulation of the various "tests" into catch words, such as "same transaction" or "same evidence" to be particularly helpful. As previously stated, each case requires close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances.

In the case of *Blockburger v. U. S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in sustaining multiple convictions in a single trial, the Court said:

"Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182.

In the very recent case of *Iannelli v. United States,* —— U.S. ——, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), the United States Supreme Court affirmed the convictions of eight defendants who were charged both with conspiring to violate a federal gambling statute and with the actual violation of that statute. Both convictions were permitted to stand, the majority of the Court concluding that this result was consistent with the legislative history of the statute involved. In a footnote to the opinion, the majority observed:

"The test articulated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), serves a generally similar function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course

of a single act or transaction. In determining whether separate punishment might be imposed, *Blockburger* requires that courts examine the offenses to ascertain 'whether each provision requires proof of a fact that the other does not.' *Id.*, at 304, 52 S.Ct. [180] at 182. As *Blockburger* and other decisions applying its principle reveal . . . the Court's application of the test focuses on the statutory elements of the offense." (Emphasis supplied). 95 S.Ct. at 1293, 43 L.Ed.2d at 627.

In its Proposed Official Draft of the Model Penal Code, the American Law Institute suggested guidelines at Section 1.07 to govern the method of prosecution when criminal conduct constitutes more than one offense. At Section 1.09(1)(c), the Institute expressly, both in the text and in the editorial comment, approved the *Blockburger* rule as one of the criteria to determine whether a former prosecution operates to bar a second.

In 1 Wharton, Criminal Law and Procedure, §§ 144–145 (Anderson, 1957), the various tests or rules to determine identity of offenses are stated, in terms similar to those quoted from the cases cited above, including the *Blockburger* case.

In the present case, it is our opinion that there were two separate and distinct offenses committed, that of armed robbery and that of assault with intent to commit murder in the second degree. Although they occurred at substantially the same time and in the course of a single "criminal episode", or "transaction", under the test of the *Blockburger* case, *supra*, and the principles announced in *Duchac*, they are not identical offenses. The same evidence was not required to prove the armed robbery as was required to prove the assault with intent to murder. The statutory elements of the two offenses are different, and neither offense is included within the other. Both convictions can clearly stand, and the case is not controlled by *Acres v.*

*State.* We limit the holding in the latter case to its particular facts.

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is reinstated, at the cost of the respondent.

FONES, C. J., and COOPER and BROCK, JJ., concur.

HENRY, J., dissents.

HENRY, Justice (dissenting).

While I concur in the ultimate holding that Black was guilty of two separate and distinct offenses, I respectfully dissent from the remainder of the opinion.

The majority opinion of the Court of Criminal Appeals proceeds upon the assumption that reversal is demanded by the ruling of this Court in *Acres v. State*, 484 S.W.2d 534 (Tenn.1972).

Judge Robert K. Dwyer concurred in the results, but not the reasoning, of Judge Galbreath's majority opinion. Judge Dwyer reasoned that since the elements of force and violence were involved in both offenses, there could be but one punishment and concluded that he would affirm the robbery conviction under the rationale found in *Walton v. State*, 1 Tenn.Cr.App. 668, 448 S.W.2d 690, 697 (1969).

Judge Charles H. O'Brien dissented, being of the opinion that the case was controlled by *Duchac v. State*, 505 S.W.2d 237 (Tenn.1973).

Both sides petitioned this Court for certiorari. In the State's petition, it is argued that "the writ of certiorari must issue so that this Honorable Court can resolve the apparent, or perhaps real, conflict between the *Acres* and *Duchac* cases".

We granted the State's petition. The grant was only in a very limited sense "in order to deal with the issue of convictions for multiple offenses in a single trial", as asserted by the majority. Actually, we

granted certiorari in order that this Court might take a new and fresh look at the considerations involved in cases involving prosecutions and convictions arising out of a "single frolic", or "one criminal episode", or the "same transaction", or arising from any other set of facts, however designated, giving rise to two or more prosecutions, conducted either successively or simultaneously.

Phrasing the matter another way, we granted the writ to clear up the conflict between *Acres* and *Duchac*, and their respective underlying cases, involving both successive prosecutions and multiple prosecutions in a single trial. We have been beseeched to address this vexatious and recurring problem. In my view it is the clear duty of this Court to speak to the issue and provide sorely needed guidance to the bench and bar of the State.

The majority, in effect, says we do not like *Acres* ; but we do not find it necessary to overrule it; however, "we are not inclined to extend its application."

The majority follows *Duchac*, but says:

It is also somewhat difficult to agree with the actual result reached in the *Duchac* case.

Convicting Duchac of burglary and carrying the instruments of the burglary is in the same precise category with convicting a defendant of murder and for "toting" the pistol used in the murder. There is something about such a ruling that curdles and corrodes reason, and is offensive to elemental standards of justice. Phrasing it in the vernacular, "these two dogs won't hunt together".

The majority says:

The cases, from their nature, have to be dealt with by analysis of the *particular situations as they arise.* (Emphasis added).

In other words, we will approach each case on an *ad hoc* basis, and let the facts of the case determine the disposition sans guidelines, standards or principles, preserving *Acres* with statements which "cannot be reconciled", and *Duchac,* in the face of actual results with which it is "somewhat difficult to agree".

A court of last resort is not an *ad hoc* committee. One of its primary functions is to clarify law for the guidance of the profession by the articulation of rules, principles and procedures designed to create a body of established and reliable precedent. The importance of settling the law was considered by Justice Brandeis to be a paramount consideration, prompting his remark that "(i)n most matters it is more important that the applicable rule of law be settled than that it be settled right".[1] We are under a duty to adopt rational standards, governing principles and precedential procedures. The majority opinion leaves the bar to speculate as to how we will apply the *ad hoc* standards of *Black* to the *Acres-Duchac* controversy.

### I.

It is precisely this *ad hoc* approach that created the confusion, chaos and conflicts that we now decline to correct.

The majority looks with favor upon *Dowdy Rules.* So do I. But *Dowdy* presents a two-fold problem.

Under the fourth rule of *Dowdy,* Acres was guilty of *two* offenses. Under the first rule of *Dowdy,* Duchac was guilty of one offense. We should point out that there is a distinction in the application of these rules between cases involving multiple prosecutions in a single trial and those involving successive prosecutions. Failure to observe this distinction has been the basic cause of the confusion we are called upon to clarify. Actually, the *Dowdy* rules apply only to successive prosecutions although their rationale may be persuasive in cases involving multiple, simultaneous prosecutions. Subsequent cases have tended to ignore this

1. A. Barth, Prophets with Honor, p. 13 (1974).

distinction as does the majority in the instant case. Ignoring the distinction renders the rules confusing.

The *ad hoc* standard we today adopt—the same standard we have applied since this Court released its opinion in *Fiddler v. State,* 26 Tenn. 508 (1847), has produced a hodge-podge of decisions which defy logical analysis. In *Fiddler* the Court held that a conviction for running a horse along a public road barred a prosecution for betting on the race.

In *State v. Chaffin,* 32 Tenn. 493 (1852), the Court held a conviction for assault bars a further prosecution for a battery committed at the same time.

In *Ramsey v. State,* 37 Tenn. 653 (1858), the Court held that a conviction for betting upon an election bars further prosecutions for other bets on the same election.

In *State v. Covington,* 142 Tenn. 659, 222 S.W. 1 (1920), the Court held that an acquittal of transporting liquor bars a subsequent prosecution for driving while drunk at the same time.

In *English v. State,* 219 Tenn. 568, 411 S.W.2d 702 (1966) the Court held that a conviction of larceny bars a prosecution for gaming arising out of the same transaction.

These *successive prosecution* cases all rest upon the application of the "same transaction" test which, according to *Duchac* is not the law in Tennessee.

I applaud the reasoning and results of these cases. They would be supportive of *Acres* had it involved successive as opposed to multiple or simultaneous prosecutions.

In other successive prosecution cases, our courts have also held that an assault to murder is not barred by a conviction for simultaneously disturbing religious worship, (*State v. Ross,* 72 Tenn. 442 (1880)); an acquittal of driving while intoxicated does not bar a subsequent prosecution of careless driving (*Usary v. State,* 172 Tenn. 305, 112 S.W.2d 7 (1938)); an acquittal of disposing of mortgaged property does not bar prosecution for obtaining money under false pretenses in the same transaction (*McClure v. State,* 174 Tenn. 140, 124 S.W.2d 240 (1939)); a dismissal of charge of rape does not bar prosecution for violation of the age of consent, involving the same female (*Hamblen v. State,* 183 Tenn. 221, 191 S.W.2d 537 (1945)); an acquittal of failing to stop after an accident does not bar a prosecution for second degree murder arising from the same events (*Eager v. State,* 205 Tenn. 156, 325 S.W.2d 815 (1959)); a burglary conviction does not bar subsequent prosecution for assault to commit rape committed simultaneously (*Harris v. State,* 206 Tenn. 276, 332 S.W.2d 675 (1960)); a conviction of robbing a store does not bar subsequent conviction for robbing a customer of the store who entered during the robbery (*Wilkerson v. State,* 211 Tenn. 32, 362 S.W.2d 253 (1962)); and a conviction for voluntary manslaughter does not bar a prosecution for carrying a pistol (*Arterburn v. State,* 216 Tenn. 240, 391 S.W.2d 648 (1965)).

These subsequent prosecutions are allowed under the "same transaction" or "same offense" test and on the basis that the offenses were distinct and separate. Generally, they involved trials for lesser offenses committed simultaneously but not necessarily lesser included offenses.

These cases do not necessarily conflict with the first group.

They involve successive trials after convictions or acquittals and present no problem that a compulsory joinder rule would not correct.

The difficulty arises when the "same transaction" or "same offense" rules, or the *Dowdy* rules, as applied in successive prosecution cases, are invoked in cases involving multiple indictments or multi-count indictments. I group these cases together for the purposes of this opinion and hereafter refer to them as dual or multiple prosecutions or convictions.

In *Patmore v. State,* 152 Tenn. 281, 277 S.W. 892 (1925), the Court applied the same transaction test and permitted only one conviction under an indictment charging possession of a still and unlawful manufacture of whiskey.

Applying the same transaction rule this Court in *Smith v. State,* 159 Tenn. 674, 21 S.W.2d 400 (1929), refused to permit simultaneous convictions for assault and battery on one person and manslaughter on another, in the same incident.

We applied the same transaction test in *Coffey v. State,* 207 Tenn. 260, 339 S.W.2d 1 (1960) and held that two offenses of the same nature arising from the same act could not stand.

We applied the same test in *Jackson v. State,* 216 Tenn. 13, 390 S.W.2d 202 (1965), with the same results.

But in *Arterburn v. State, supra,* we permitted two convictions, i. e., voluntary manslaughter and carrying a pistol, to stand.

In *Morgan v. State,* 220 Tenn. 247, 415 S.W.2d 879 (1967), we permitted multiple prosecutions growing out of the same act by reason of their being separate and distinct acts.

In *Walton v. State,* 1 Tenn.Cr.App. 668, 448 S.W.2d 690 (1969), the Court of Criminal Appeals permitted only one conviction to stand because the two offenses charged resulted from one continuing act, inspired by the same criminal intent.

In *Carr v. State,* 2 Tenn.Cr.App. 568, 455 S.W.2d 619 (1970), the Court of Criminal Appeals followed the same reasoning and reached the same conclusion, allowing only one conviction to stand.

However, in *Hayes v. State,* 4 Tenn.Cr. App. 360, 470 S.W.2d 950 (1971), the Court of Criminal Appeals permitted two convictions on the basis of their being two distinct and unconnected offenses.

In *Rochett v. State,* 475 S.W.2d 561 (Tenn.Cr.App.1971), two convictions were permitted on the basis of being separate and distinct offenses with separate intents.

In *Simmons v. State,* 483 S.W.2d 590 (Tenn.Cr.App.1972), two convictions were permitted on the basis of one continuous transaction requiring separate actions.

Then, in *Acres,* this Court rejected convictions for armed robbery and murder on the basis of their commission being "a single continuing act inspired by the same criminal intent", in effect, applying the "same transaction" test.

In *Ward v. State,* 486 S.W. 292 (Tenn.Cr. App.1972), the Court of Criminal Appeals went back to the "same evidence" rule and permitted two convictions to stand.

In *Young v. State,* 487 S.W.2d 305 (Tenn. 1972), this Court based its ruling on a single continuous intent, and permitted only one conviction.

In *Russell v. State,* 499 S.W.2d 945 (Tenn. Cr.App.1973), the Court based its decision on different elements and, in a sense on the "same evidence" rule.

Then in *Duchac,* this Court embraced the "same evidence" and rejected the "same transaction" test.

## II.

Our approach to this problem area of the law has been inconsistent both as to the rules and as to their application. There is no escape from the conclusion that these rules and the *Dowdy* rules have not been uniformly applied. No logical pattern emerges.

In my view, our approach to a solution of the problem of successive and multiple prosecutions and convictions necessarily entails a separation and isolation of the problem areas in a two-step analysis.

First, we must focus on the procedural aspects of the problem and determine the number of prosecutions the state may bring (successive prosecutions); secondly, we

must establish guidelines to govern cases involving multiple charges in a single trial.

It is the failure to take this analytical approach that has created the confusion I would seek to correct.

At the very outset I recognize that the issues here addressed are rooted in the double jeopardy provisions of the Federal and State Constitutions.

The Fifth Amendment to the Constitution of the United States provides, in part:

(N)or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . .

This is a "fundamental ideal in our constitutional heritage" and it applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

In *Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199, 204 (1957), the Court said:

. . . (t)he underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. This underlying notion has from the very beginning been part of our constitutional tradition. Like the right to trial by jury, it is clearly "fundamental to the American scheme of justice".

Article 1, Sec. 10 of the Constitution of Tennessee provides:

That no man shall, for the same offence (sic) be twice put in jeopardy of life or limb.

It will be noted that Tennessee's Double Jeopardy clause differs only stylistically from that contained in the Fifth Amendment.

## III.

I necessarily digress at this point in order to proceed to a discussion of the various "tests", since such a discussion forms a necessary predicate to the solutions that I have earnestly, but vainly, urged upon the Court.

The "same evidence" test was first enunciated in 1796 in the English case of *Rex v. Vandercomb & Abbott,* 168 Eng.Rep. 455, 461 (Ex.1796) in these terms:

(U)nless the first indictment were such as the prisoner might have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second.

England has since abandoned this rule and has adopted the "same transaction" test. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

The "same evidence" test was enunciated in this country in *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871) wherein the test is

* * * not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each offense requires proof of an additional fact which the other does not, an acquittal, or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

The Supreme Court of the United States has never applied the "same evidence" test in a case involving the Fifth Amendment double jeopardy guarantee against successive prosecutions. It has, however, applied the test in cases involving multiple charges in a single trial and has held that multiple convictions and cumulative punishments are

permissible if the offenses charged are not the same under the test.

In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) the Court said:

Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

This, in effect, is the same evidence test.

In *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958) the Supreme Court adhered to this holding.

The Supreme Court has laid down what has been called a variation of the "same evidence" rule, known as the "distinct elements" test.[2] In *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911) the Court, dealing with a successive prosecution case, said:

A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

Another variation was developed in *Burton v. United States,* 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057 (1906) where the Court laid down an "identity test", holding that offenses are the same only if they are identical in law and in fact.

The "same evidence" test has been strongly criticized. In *Ashe v. Swenson, supra,* the majority opinion did not reach the proposition of identity of offenses, the majority holding that Ashe's second trial (for a multiple armed robbery) was barred by collateral estoppel, a part of the constitutional guaranty against double jeopardy.

Justice Brennan, in his concurring opinion (joined by Justices Douglas and Marshall), commented on the "same evidence" test as follows:

(I)ts deficiencies are obvious. It does not enforce but virtually annuls the constitutional guarantee. For example, where a single criminal episode involves several victims under the "same evidence" test a separate prosecution may be brought as to each. (Citations omitted). The "same evidence" test permits multiple prosecutions where a single transaction is divisible into chronologically discrete crimes. (Citations omitted). Even a single criminal act may lead to multiple prosecutions if it is viewed from the perspectives of different statutes. (Citations omitted). Given the tendency of modern criminal legislation to divide the phases of a criminal transaction into numerous separate crimes, the opportunities for multiple prosecutions for an essentially unitary criminal episode are frightening. And given our tradition of virtually unreviewable prosecutorial discretion concerning the initiation and scope of a criminal prosecution, the potentialities for abuse inherent in the "same evidence" test are simply intolerable.

Justices Brennan, Douglas and Marshall would reject the "same evidence" test and adopt the "same transaction" test.

2. 75 Yale L.J. 262, 273 (1965).

However, the Chief Justice, dissenting, would have applied the "same evidence" test.

I am convinced that the "same evidence" test does not provide adequate protection, under modern conditions, from the evils contemplated by the double jeopardy prohibitions. The development of the criminal law and the "criminal law explosion" of the last decade have shed a new light on the constitutional prohibition against double jeopardy. Time was when our criminal code contained relatively few offenses and a single course of conduct was unlikely to produce multiple offenses. As our state has progressed the number, complexity and intricacy of criminal statutes have undergone a corresponding change. One only needs to look at our present criminal code and the proposed code prepared by the Tennessee Law Revision Commission to validate the conclusion that we have witnessed a veritable proliferation of penal statutes.

As stated in *Ashe,*

As the number of statutory offenses multiplied the potential for unfair and abusive reprosecutions became far more pronounced.

The Oregon Supreme Court, in *State v. Brown, infra,* in this regard, commented:

A prosecutor is limited only by the number of ways in which the legislature has made the defendant's conduct punishable, and may indulge in the harassment against which the double jeopardy guarantee should protect. He may split his case, so that if the first trial results in an acquittal he can try the defendant again, for essentially the same conduct, before a different jury or, in case of a conviction, he can prosecute further to obtain what he considers a suitable punishment. He can use the first prosecution as a "trial run", planning on refining his case if the first prosecution is unsuccessful. As a consequence, a defendant is deprived of the assurance that an acquittal is the end of the matter or that a conviction and sentence is the final measure of his guilt and punishment. Moreover, repeated prosecutions strain the resources of defendants and dissipate those of the courts and prosecutors, and deprive judgments of their finality. Modern commentators are, for these reasons, justly critical of the "same evidence" test.

I cannot join with the majority in the adoption of the "same evidence" rule, permitting, as it does, multiple prosecutions where a single transaction is devisible into chronologically discrete crimes. See *Johnson v. Commonwealth,* 201 Ky. 314, 256 S.W. 388 (1923) (each of 75 poker hands a separate offense).[3]

The most commonly proposed alternative to the "same evidence" rule is some form of compulsory joinder of charges arising out of the same act or transaction. *State v. Brown,* 262 Or. 442, 497 P.2d 1191 (1972).

The "same transaction" test proceeds upon the theory that double jeopardy attaches when a second trial is attempted for crimes arising out of the same transaction.

Under this test a prosecution is barred if in a previous prosecution the defendant was charged with an offense grounded in the same factual transaction.

This test was applauded by Justice Brennan in his concurring opinion in *Ashe, supra,* in these words:

This "same transaction" test or "same offense" not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy clause, but responds well to the increasingly undisputed recognition that the consolidation in one lawsuit of all issues arising out of a single transaction

---

**3.** As a minimum, having adopted the "same evidence" rule the majority should have excepted from its application lesser included offenses, and should have recognized the doctrine of collateral estoppel.

or occurrence best promotes justice, economy, and convenience.

## IV.

Having discussed the various tests, I now return to step one of the analysis, dealing with successive prosecutions. The compulsory joinder approach has been adopted by the American Law Institute in its Model Penal Code,[4] as an answer to this problem.

The Federal Rules of Criminal Procedure encourage the joinder of parties and charges in a single trial.[5] These rules represent the best of modern thought in structuring criminal trials.

Michigan adopted the "same transaction" test in a most excellent opinion by Justice Swainson, in *People v. White*, 390 Mich. 245, 212 N.W.2d 222 (1973).

See also another comprehensive opinion by the Pennsylvania Supreme Court in *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), holding that the Double Jeopardy clause requires a prosecutor to bring in a single proceeding all known charges against a defendant stemming from a "single criminal episode".

I would hold that the Double Jeopardy clauses of the Constitution of the United States and of the State of Tennessee require that the prosecutor join at one trial, either in multiple indictments or, in proper cases, in multi-count indictments, all the charges against a defendant that grow out of a single act, event, occurrence, episode, transaction or behavioral incident.

Subject to the right of the trial judge to grant a severance if the ends of justice so require, I would hold that:

"(A) defendant shall not be subject to separate trials for multiple offenses based upon the same conduct or arising from the same criminal episode, if such offenses are known to the appropriate

prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court."

This is the standard promulgated by the American Law Institute in its Model Penal Code, Sec. 1.07(2) (P.O.D.1962).

It should be noted that these standards are procedural in nature and do not preclude multiple convictions, separate convictions or cumulative punishments, nor do they require single indictments. Conduct may be divisible for purposes of punishment and yet unitary for purposes of prosecution.

Further these standards do not preclude the trial judge from granting a severance and ordering separate trials, at the behest of either party, upon his determination that the ends of justice so require.

The objective of these standards is the formulation of limitations upon unfair, expensive, court-clogging and constitutionally suspect multiplicity of prosecutions based upon essentially the same conduct.

These same standards do not require that the District Attorney General prosecute for all known offenses. His discretion remains. All that is required is that all known charges be determined in a single prosecution. The penalty for failure to do so is that the State is forever barred from subsequent prosecutions violative of these standards.

The formulation of these rules would result in better structured trials and will substantially reduce the chaos and confusion which now enshrouds Tennessee criminal procedure.

I fully appreciate the fact that the compulsory joinder of criminal charges is a matter upon which the legislature might properly act; however, it is not exclusively within the legislative domain.

We are concerned with the minimum protection required by the State and Federal Constitutions.

---

4. American Law Institute, Model Penal Code, 1.07(2) (P.O.D.1962).

5. See Rules 8 and 13, Federal Rules of Criminal Procedure.

928

In my judgment, the Double Jeopardy clauses of each constitution demand a limitation on successive prosecutions.

Hence the necessity for the formulation of these standards.

### V.

Having suggested a compulsory joinder procedure to safeguard and protect basic constitutional rights it becomes necessary to lay down rules relating to multiple convictions.

Again I would adopt the provisions of the ALI Model Penal Code[6] as follows:

When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

(a) one offense is included in the other; or

(b) one offense consists only of a conspiracy or other form of preparation to commit the other;[7] or

(c) inconsistent findings of facts are required to establish the commission of the offenses; or

(d) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(e) the offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

Tennessee, as heretofore pointed out, has a felony-murder statute. These standards

should not be construed to prevent dual convictions in felony-murder cases.

The felony-murder rule is not at issue in this case. I reserve a full discussion and conclusion for subsequent consideration. I point out in passing that the majority opinion takes the position that the felony-murder rule, as enunciated in *Acres*, precludes a second conviction, and only one conviction may stand. I disagree with this result and point that it is hopelessly at variance with the "same evidence test," as impliedly adopted by the majority. Under the main opinion, Acres was guilty of two offenses under the "same evidence" test. In the same opinion, he was guilty of one offense under the felony-murder rule.

Nor should these standards be construed to prevent a severance when the interests of justice require.

The fact that crimes occur at substantially the same time and place does not in itself preclude multiple convictions.

When we consider multiple convictions resulting from a single trial we must do so in the light of the fact that our constitutional provisions are not aimed at *convictions* but *trials*. As Chief Justice Burger noted, in *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970):

"The prohibition is not against being twice *punished*, but *against being* twice put in jeopardy . . .." . . .
The "twice put in jeopardy" language of the Constitution thus relates to a potential, i. e., the risk that an accused for a second time will be convicted of the "same offense" for which he was initially tried. (Emphasis ours).

Nothing I have said in this dissent relates to the form, manner or extent of punishments. They are not here involved.

**6.** American Law Institute, Model Penal Code, Sec. 1.07(1) (P.O.D.1962).

**7.** As pointed out in the comment under Sec. 1.08 (now 1.07) of the Code, "the limitation of the draft is confined to the situation where the completed offense was the sole criminal objective of the conspiracy. Therefore, there may be conviction of such a conspiracy if the prosecution shows that the objective of the conspiracy was the commission of additional offenses."

## VI.

I apply these rules, first to *Acres*.

All offenses were charged and tried in a single proceeding.

They were committed as a part of the same transaction.

But he did not fall within any of the exceptions.

Hence, Acres was subject to conviction both for murder and armed robbery.

I would abandon *Acres*.

I apply them next to *Duchac*.

All offenses were charged and tried in a single proceeding.

They were committed as a part of the same transaction.

However, the burglarious tools were possessed in preparation for the commission of the burglary or in order to accomplish the same.

Hence, Duchac's conviction should have been restricted to third degree burglary.

I would depart from *Duchac*.

I apply the standards lastly to the case at bar.

All charges against Black were presented in one indictment and he was proceeded against in a single trial.

The charges grew out of a single transaction.

He committed two wholly separate and distinct offenses for which he was properly convicted. There was a break or pause in continuity. The robbery had been fully and finally accomplished. Thereafter, he committed the assault.

His offenses do not fall within any of the exceptions.

I file this dissent out of an honest belief that my brothers have erred in their failure to come to grips with the issues presented to the Court for solution, and because I conceive it to be my duty to make known my views. I sincerely hope the Bench and Bar of this State will carefully and critically examine these comments and conclusions and will unite in an effort to achieve solutions. If this dissent challenges the interest of those who preside over and participate in criminal trials, it shall have been well worth the time and effort expended in its preparation. Hopefully we will soon resolve the old *Acres-Duchac* controversy and the newly created *Acres-Duchac-Black* problem.