**Paul KEENER, Jr. and Richard Hulsey, Appellants,**

**v.**

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 19, 1980.

James F. Conley, Tullahoma, for appellant Paul Keener.

Frank Van Cleave, Tullahoma, for appellant Richard Hulsey.

William M. Leech, Jr., Atty. Gen., Nashville, Charles L. Lewis, Asst. Atty. Gen., Nashville, J. William Pope, Jr., Dist. Atty. Gen., Pikeville, Charles S. Ramsey, Jr., Dist. Atty. Gen., Manchester, for appellee.

## OPINION

DAUGHTREY, Judge.

The defendants, Paul Keener, Jr. and Richard Hulsey, were jointly indicted with two others, John Miksa and Eugene Dye, in the robbery of criminal investigator Bill Nolen and his abduction from his Coffee County home in July, 1978. Nolen's house was burned, and he was transported in the trunk of his automobile into Grundy County, where he was shot and almost killed while escaping from his captors.

Miksa and Dye were severed from the case and testified for the prosecution. Keener and Hulsey were convicted of armed robbery, two counts of grand larceny, kidnapping and arson. The trial judge ordered the resulting sentences[1] to be served consecutively, with the exception of the grand larceny sentences, which under the court's order were to be served concurrently with each other and consecutively to the remaining sentences.[2] We find, however, that the armed robbery and larceny convictions are for the "same offense" and may not properly be used to support separate penalties; we therefore conclude that the larceny convictions must be set aside. Finding no other reversible error, we affirm the balance of the judgment.

During the early morning hours of July 16, Nolen awoke to the noise of his doorbell ringing. When he opened the door he was overpowered by two men who forced him to the floor, held a knife at his back, stripped him naked, and tied his hands and feet behind his back. One of the intruders, Hulsey, took Nolen's pistol from Keener, who had found it in the house, and held it on Nolen, threatening to blow his head off if he moved.

While Hulsey stayed with Nolen, Keener ranged through the house, taking the keys

---

1. Keener received sentences of 30 years (robbery), five to ten years (larceny), five to ten years (larceny), four to ten years (kidnapping), and six to 21 years (arson). Hulsey's sentences were the same, except that he received a four to nine year sentence for kidnapping. Both Keener and Hulsey were acquitted of first degree burglary.

2. In the order denying the defendants' motion for a new trial, the trial judge found that the larceny counts for theft of Nolen's car and for theft of his recreational vehicle were "identical offenses" under the criteria laid down in *State v. Black*, 524 S.W.2d 913 (Tenn.1975). Finding a single offense, the trial judge indicated that his only alternatives were to reverse both convictions and order a new trial, or to order that the two sentences be served concurrently. He chose the latter course. However, if the trial judge's initial conclusion regarding the identity of the offenses is correct, and we think that it is, then the remedy he utilized is not sufficient to cure the error. One of these two convictions should have been reversed and dismissed, in order to produce a valid judgment against Keener and Hulsey. But given our holding merging both larceny convictions into the armed robbery conviction, this question becomes moot.

to Nolen's 1977 Oldsmobile and a borrowed camper, his wallet, and some money. To Hulsey's suggestion that they "just go ahead and kill him here," Keener replied, "Hell no, we're not going to kill him here. I've got other plans for him." Nolen was then dragged out of the house and across the driveway; the two men closed him in the trunk of the Oldsmobile, his feet and arms still tied behind him. As Nolen lay in the trunk, he could hear the men going in and out of the back door of his house, "banging and throwing stuff around." After 15 or 20 minutes, Keener told Hulsey to drive Nolen's car, that he would follow. The car pulled away, stopping briefly two or three times for conversation between Hulsey and Keener.

In the meantime, Nolen had managed to untie his hands and he began to work on the truck lid with a tire tool. After some 30 or 45 minutes he succeeded in breaking the lock and the trunk lid flew open. The car came to an immediate halt and Nolen made efforts to get out of the trunk. Just at that instant he was shot by Keener, who had been driving the camper and following closely behind the Oldsmobile. The shot entered Nolen's chest and exited at his upper hip level, paralyzing one leg. Nevertheless, he managed to stumble down the highway, hobble across the road, and roll into a ditch. At this point, Hulsey drove off quickly in Nolen's car, followed by a green Pontiac that had stopped behind the camper, and finally by the camper.

Several people came to Nolen's aid. Seriously injured, he was ultimately transported to Nashville, where he was hospitalized for 28 days and underwent three surgical operations.

The proof showed that Nolen's house burned virtually to the ground at about 5:00 A.M. on July 17. Nolen testified that before he was placed in the car trunk either Keener or Hulsey said, "Let's just go ahead and kill him here and burn the house." The state fire marshall testified that he had found a partially emptied can of lighter fluid outside Nolen's house. He said that because the house had been ransacked and

because he could find no natural cause for the fire, it was his opinion that the fire was the result of arson.

Various witnesses at trial placed a green Pontiac near the Nolen residence at about 4:30 A.M.; one witness was able to match the two defendants to the description he had given of two men he saw near the Pontiac. Another witness had seen Nolen's dramatic escape from the trunk of the Oldsmobile while travelling the Altamont highway at about 5:50 A.M. on the 17th. Other persons who aided Nolen also testified; one of them was able to identify Keener.

Finally, the defendants' two cohorts, Dye and Miksa, testified for the State. All four were from the Chattanooga area and had travelled to Manchester in Miksa's green Pontiac, ostensibly to get "some pot and money from a queer who lived down there." When they got to Nolen's house, Keener told Dye and Miksa to stay in the car; both of them passed out, apparently from having ingested a large quantity of beer and marijuana. Dye said that when he came to, Hulsey was shouting for them "to get the hell out of here." Dye had difficulty waking Miksa, so he took the driver's seat and followed Hulsey and Keener out of the area. Before they left, Dye saw that the house was on fire. After Nolen was shot, Dye said, Keener and Hulsey abandoned Nolen's car and camper and got in the Pontiac with him and Miksa. As they drove back to Chattanooga, Keener said that he had shot a man and that he had burned the house.

Miksa's testimony corroborated Dye's. On July 18, Miksa had turned himself in to Chattanooga police. Investigating officers later went to Miksa's home, where they found Keener and Dye.

There was no evidence presented on behalf of the defendants.

 We think the proof is clearly sufficient to permit a finding of Keener's and Hulsey's guilt, beyond a reasonable doubt, of the offenses of armed robbery, kidnapping and arson. See Rule 13(e), Tennessee Rules of Appellate Procedure; *Jackson v.*

*Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although the proof as to the arson charge against Hulsey is circumstantial in nature, we think the jury was warranted in finding that he was at least an aider and abettor in the commission of this crime.

■ However, we do not think the evidence is sufficient to establish the offenses of stealing Nolen's Oldsmobile and of stealing his camper, separate and apart from the theft of the items taken from his home by force and intimidation, which formed the basis for the robbery charge. Larceny is defined by Tennessee law as "the felonious taking and carrying away of the goods of another." T.C.A. § 39–4202. Our courts have held that robbery is but an aggravated form of larceny. *State v. Scates,* 524 S.W.2d 929 (Tenn.1975). Thus, separate convictions for both larceny and armed robbery involving the same offense cannot be permitted to stand under Tennessee law. *State v. Black,* 524 S.W.2d 913 (Tenn.1976).

■ Is the taking of the various items described in the indictment the "same offense"? We conclude, under the proof in this case, that it is. In the first place, the record shows that the keys to the two vehicles were taken by Keener from inside the house, while Nolen was being held there at gunpoint. A fair reading of the evidence thus indicates that the defendants' intent to steal the vehicles was formed at the same time that the other items enumerated in the armed robbery count were taken. Several articles specified in that count were actually loaded into the camper while Nolen was being confined by force in the trunk of the Oldsmobile. It is therefore clear beyond question that the intent to steal both the Oldsmobile and the camper arose considerably in advance of the time that the two vehicles were actually driven away and that the "taking and carrying away" of those items removed from the house (including the keys to the vehicles) and the vehicles were completely commingled. Furthermore, had the defendants taken nothing other than the Oldsmobile and the camper,

under the same circumstances as appear in this record (that is, after an assault on Nolen and the use of force and intimidation), the taking of the vehicles alone would have supported a charge of robbery.

Our Supreme Court has held that in determining whether two convictions arising out of the same transaction can support separate convictions, the correct test is:

> . . . whether the same evidence is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense . . . [But if] there was one act, one intent and one volition, and the defendant has been tried on a charge based on that act, intent, and volition, no subsequent charge can be based thereon . . . ." *State v. Black, supra,* 524 S.W.2d at 918.

We think the evidence of larceny and robbery in this case shows "one act, one intent, and one volition," arising from the same evidence. Moreover, in *Black* the court quoted with approval the following highly relevant *dictum* from *Dowdy v. State,* 158 Tenn. 364, 366, 13 S.W.2d 794, (1928):

> When the facts constitute but one offense, though it may be susceptible of division into parts, as for stealing several articles from the same person at the same time, conviction for stealing one of the articles will bar subsequent prosecution for stealing the others. 524 S.W.2d at 916.

We therefore hold that multiple convictions for both larceny and armed robbery cannot stand in this case. Under the authority of *State v. Black, supra,* and *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1978), the two larceny convictions against Keener and Hulsey must be set aside.

■ We have examined the remaining points raised on appeal and we find no error. The trial judge did not abuse his discretion in permitting Nolen to describe briefly the extent of his gunshot wound and the course of his treatment and recovery.

Furthermore, the trial judge correctly applied the rule of *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976), in prohibiting the use of extrinsic evidence offered by defense counsel in an attempt to show that Nolen was a homosexual, a fact which Nolen denied from the stand. Finally, there is no constitutional merit to Keener's contention that he was denied equal protection of law under the Tennessee rule which guarantees a preliminary examination to those whose prosecution is commenced by an arrest warrant, but fails to provide for such a hearing if the prosecution is initiated by the return of an indictment or presentment,[3] except under certain limited circumstances.[4]

The defendants' convictions for grand larceny must be vacated and dismissed. The remainder of the judgment is affirmed.

BYERS and SCOTT, JJ., concur.

3. Although the record is not entirely clear, it appears that when Keener was taken into custody in Chattanooga on the 18th, he was charged with felonious assault and jailed in Grundy County. The next day the Coffee County Grand Jury returned the multi-count indictment in this case, and Coffee County officials went to Grundy County, where they executed a capias warrant against Keener.

4. See Tennessee Rules of Criminal Procedure, Rule 5; *Waugh v. State*, 564 S.W.2d 654 (Tenn. 1978).