**STATE of Tennessee, Appellee,**

v.

**Gregory Kent WARREN,
Defendant/Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 14, 1988.

Permission to Appeal Denied by Supreme Court April 4, 1988.

W.J. Michael Cody, Atty. Gen., Kathy M. Principe, Asst. Atty. Gen., David G. Dake,

and William H. Crabtree, Asst. Dist. Attys. Gen., for appellee.

Albert J. Newman, Jr., Knoxville, Tenn., for defendant/appellant.

## OPINION

BIRCH, Judge.

Convicted by a jury in the Criminal Court of Knox County of robbery accomplished by the use of a deadly weapon, aggravated kidnapping, and grand larceny, the defendant was sentenced to penitentiary terms of 60 years, 60 years, and 10 years, respectively. He appeals these judgments as of right, raising the following issues for our review:

1. Was the evidence sufficient to sustain the verdict?

2. Was the identification evidence properly admitted?

3. Was the defendant forced to wear clothing at trial which violated his due process rights?

4. Was the district attorney general's argument prejudicial error?

5. Was it proper for the trial court to charge the jury on the law of admission?

6. Was consecutive sentencing appropriate?

The conviction for grand larceny is vacated. The remaining judgments are affirmed as modified.

Summarizing the evidence, the female victim was accosted at a shopping mall by a male who obstructed her path and ordered her to get into her car which she had just parked. Upon her refusal, the male produced a gun. At this point, a second male [1] appeared, also armed with a gun. Her keys were taken from her by one assailant, who promptly slid into the driver's seat of her car and unlocked the rear door for the other assailant, who snatched her purse from her arm, forced her into the back seat, and threatened to blow her head off if she did not keep quiet. The car left the area at high speed. The victim was able to unlock the rear door without being noticed.

She then jumped from the moving car and was assisted by passers-by who observed her distress. This incident occurred during daylight hours.

Her car was recovered two days after the incident, and her purse was found in a dumpster a short distance from the car.

About a month later, the victim viewed photographs of suspects. Without hesitation, she identified the defendant as the first assailant.

The pictures were placed in different order three or four times and the victim again unhesitatingly selected the defendant each time.

Defendant was arrested about five weeks after the incident and was promptly advised of his rights. The detective testified that he asked the defendant if he had taken any drugs before "the case where the gal jumped out of the car." The defendant responded to the effect that he was high on drugs as usual, and that he had taken a whole bunch of pills that some friends had given him, that he did not know what kind of drugs they were, but that they were good and he had taken a lot of them.

## 1.

The defendant contends that the proof is insufficient to support convictions for robbery accomplished by the use of a deadly weapon, aggravated kidnapping, and grand larceny. When the sufficiency of the evidence is challenged, the standard for appellate review is whether, after considering the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. On appeal, the state is entitled to the strongest legitimate view of the evidence, and all reasonable and legitimate inferences which may be drawn from the proof. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). In a criminal action, a conviction will be set aside only where the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt

1. Darrell Eugene Warren was jointly indicted, but was not tried with Gregory Warren.

beyond a reasonable doubt." Tennessee Rules of Appellate Procedure 13(e). In a jury trial, a guilty verdict, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in testimony in favor of the theory of the state. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978).

The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the testimony, however, are matters entrusted exclusively to the jury as the triers of fact. *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn.Crim.App. 1978). The jury in this case chose to accredit the testimony of the prosecution witnesses and reject the testimony of the defendant. The evidence fully supports their verdict. We conclude that any rational trier of fact could have found the essential elements of the crimes of robbery accomplished by the use of a deadly weapon and aggravated kidnapping beyond a reasonable doubt. *See* Tenn.Code Ann. §§ 39–2–501, 39–2–301, 39–3–1103. The evidence of defendant's guilt in each of the two counts is more than ample to satisfy the requirement prescribed in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and Tennessee Rules of Appellate Procedure 13(e).

We find, however, that the taking of the purse and the taking of the vehicle were accomplished at the same time and are but parts of a single continuing criminal act, inspired by the same criminal intent which is essential to each offense. *See State v. Black,* 524 S.W.2d 913, 917 (Tenn.Crim.App.1975).

We also faced this same issue in *Keener v. State,* 598 S.W.2d 836 (Tenn.Crim.App. 1980), in which our esteemed colleague, Judge Daughtrey (also a member of the panel in the case *sub judice* ), set aside a larceny conviction under much the same factual circumstances.

We accordingly vacate the grand larceny conviction.

## 2.

The defendant says that the trial court should have suppressed the victim's in-court identification of the defendant because the photographic array, being unduly suggestive, tainted the later in-court identification. We find to the contrary.

Photographic arrays have been held to be appropriate in developing suspects. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Shye v. State,* 506 S.W.2d 169, 174 (Tenn. Crim.App.1973). The question is whether the facts and circumstances reveal any evidence of suggestion, prompting, coaching, or any other activity which would influence the viewer. In the case *sub judice,* six photographs were submitted to the victim. She picked out the defendant without hesitation. The photographs were then shuffled into different order, and she again picked out the defendant. The defendant has not directed us to any evidence from which we could find that the photographic array was suggestive, and thus we need not reach the next plateau. But assuming for the sake of argument that the photographic array was improper and suggestive, the burden would yet be on the defendant to demonstrate how the photographic array created a "substantial likelihood of misidentification." *Simmons, supra; State v. Ward,* 712 S.W.2d 485, 488 (Tenn.Crim.App.1986).

The proof shows the victim identified the defendant from her encounter with him which lasted about fifteen minutes in daylight. So detailed was her observation that she remembered and testified that the whites of defendant's eyes were completely yellow.

Including the defendant's brother, Darrell Warren, in the photographic array was certainly not improper, although her identification of the brother as the second assailant neither adds nor detracts from her identification of the defendant.

There is no infirmity in the photographic array or in the in-court identification. This evidence was properly admitted.

## 3.

Defendant says he was forced to trial while attired in a "prison-type" uniform.

■ The record indicates that the defendant was offered different unmarked clothing. He refused to change into them. The trial judge literally "bent over backwards" in an effort to accommodate the defendant, but he persisted in his refusal. A careful reading of the record reveals that the defendant apparently had set out to disrupt the trial by whatever means were available.

We find no error in the trial judge's actions in the premises.

4.

■ Defendant next contends that the statement made during closing argument by the assistant district attorney general to the effect that Darrell Warren and Gregory Warren are brothers was so prejudicial as to require a new trial. We do not think so. Both men were already so closely linked to each other by the evidence in the case that the statement made by the assistant district attorney could not have prejudiced them.

There is no error in this assignment.

5.

Defendant next asks us to review whether the trial court should have given the jury the instruction on admission.

The trial court gave the jury the instruction on express admission against interest. T.P.I.Crim. 37.07.

The judge entertained and ruled upon special requests for charges. He did so in compliance with Rule 30(a), Tenn.R.Crim.P. At this time, there was indeed no mention of the instruction on express admissions against interest.

Officer Jim Morris testified to a conversation he had with defendant after defendant had been advised of his rights:

I asked Mr. Warren if he had taken any drugs before the case where the gal had jumped out of the car. Mr. Warren stated that he was high on drugs as usual, and that he had taken a whole bunch of pills that day.

The assistant district attorney general characterized this in his argument as a statement against interest.

■ It occurs to us that under the circumstances of this case such an instruction benefits the defendant, in that it cautions the jurors that they should not interpret the defendant's statement as a full, though implied, confession of guilt. The instruction simply enabled the jury to receive the statement for what it was.

Trial judges have a duty to instruct the jury as the facts and circumstances demand. *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn.1986); *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn.1975).

The trial judge was correct in giving the questioned instruction.

6.

The defendant was sentenced to imprisonment for 60 years each in the robbery accomplished by the use of a deadly weapon and kidnapping. He also received a ten-year sentence on the conviction for grand larceny. The sentences in each count were ordered to be served consecutively to each other, for a total effective sentence of 130 years. However, having vacated the grand larceny conviction, we accordingly reduce the effective sentence to 120 years.

The main thrust of the defendant's attack on the sentences is not the consecutive sentences received in the above-enumerated counts, but rather, the ruling making the sentence in this case consecutive to the sentence of 110 years received in other cases on another occasion.

In any event, we examine each aspect of the sentence *de novo* without a presumption of correctness. Tenn.Code Ann. § 40–35–402(d).

■ The defendant committed these felonies while on bail for a felony upon which he was subsequently convicted. This fact alone requires the sentences to be cumulative and the trial judge has no discretion to order otherwise. It results that the sentences in the instant case are properly ordered to be consecutive to the previous

sentence of life imprisonment. Tenn.Code Ann. § 40–20–111(b).

The pre-sentence report reveals that from his first recorded juvenile offense in May, 1979, up to now, defendant has managed to amass a voluminous record of prior offenses which includes rapes, robberies, kidnappings, larcenies, and other violent crimes, some aggravated in nature. Just as the frequency of occurrence escalated as the defendant grew older, so also did their severity. Several serious infractions occurred while defendant was incarcerated. Viewing defendant's record in perspective, it is manifest that he has chosen crime as a career.

Enhancement factors present, in addition to previous history of convictions or of criminal behavior [2] discussed above, are:

1) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors [3];

2) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense [4];

3) The defendant had no hesitation about committing a crime when the risk to human life was high [5].

One mitigating factor which, when stretched, may apply to this 23–year–old defendant is the age and judgment factor [6].

■ For the reasons discussed above, the defendant is without question one who has committed an especially aggravated offense. At the same time, the several enhancement factors played against the mere hint of a lone mitigating factor more than justify a sentence at the upper limit of Range II.

The defendant acknowledges having used a wide variety of illegal drugs, having acquired by age 20 a desire for cocaine costing $250 per day approximately. He most assuredly is a dangerous offender, and confinement is absolutely necessary to protect society by restraining this defendant who has a long history of criminal conduct. Tenn.Code Ann. § 40–35–103(1)(A). Confinement is also necessary in this case to avoid depreciating the seriousness of the offense and to provide an effective deterrent to others likely to commit similar offenses.

■ Turning to the issue of consecutive/concurrent sentences for the offenses *sub judice*, the trial judge, applying the criteria in *Gray v. State*, 538 S.W.2d 391 (Tenn.1976), determined the defendant is a dangerous offender, for whom consecutive sentencing is appropriate. The defendant seemingly does not contest this finding, for throughout his brief on this issue, he treats the 60–60–10 consecutive (130 years) sentence in this case as a *fait accompli*. The trial judge ruled correctly.

We are therefore of the opinion that the record is without other reversible error, and the sentence as modified is fitting both as to length and manner of service. The judgment as modified is affirmed, together with the orders in aid of the judgment.

DAUGHTREY and BYERS, JJ., concur.

---

2. Tenn.Code Ann. § 40–35–111(1).

3. Tenn.Code Ann. § 40–35–111(2).

4. Tenn.Code Ann. § 40–35–111(9).

5. Tenn.Code Ann. § 40–35–111(10).

6. Tenn.Code Ann. § 40–35–110(7).