STATE of Tennessee, Petitioner,

v.

**Eddie Ralph SCATES, Respondent.**

Supreme Court of Tennessee.

June 16, 1975.

John B. Hagler, Jr., Asst. Atty. Gen., Nashville, for petitioner; David M. Pack, Atty. Gen., Nashville, of counsel.

Paul E. Dew, Ripley, for respondent.

## OPINION

HARBISON, Justice.

Certiorari was granted in this case to consider the scope and application of the decision of this Court in *Young v. State*, 487 S.W.2d 305 (Tenn.1972).

There is little dispute in the record as to the material facts. Respondent and a companion were prisoners at the Fort Pillow State Farm in Lauderdale County. On April 7, 1972 they, together with several other prisoners, were working off the prison grounds at the Fort Pillow State Park.

Respondent and his companion threatened their guard and the Park Superintendent with bush axes, or "kaiser" blades, and forced them to lie on the ground. In addition they forced the Park Superintendent to give them the keys to his pick-up truck, took possession of the truck and drove it away from their place of work. The vehicle was found abandoned several hours later, and at a point several miles from the point of escape, although the exact distance is not stated in the record. Respondent and his companion hid beneath the residence of Mr. John Hilton, which is situated some eight miles from the prison. When Mr. Hilton discovered them, they threatened him with a shotgun which they had found in the stolen truck. They forced Mr. Hilton to accompany them inside the residence, where they held him as hostage for several hours. Later, when his wife and daughter returned home, the prisoners also restrained them. Subsequently the prison warden arrived, entered the residence, and finally persuaded the escaped prisoners to return with him to the prison.

Respondent and his companion were indicted on and convicted of charges of felonious escape and armed robbery. They were also indicted on a third charge of kidnapping, but after the trial of the case, the latter charge was voluntarily dismissed by the State. The companion of respondent died subsequent to the trial.

We agree with the Court of Criminal Appeals that there is ample evidence in the record to support the convictions and that none of the assignments of error made by the respondent in his appeal to the Court of Criminal Appeals regarding the trial procedures had merit.

The Court of Criminal Appeals, however, in a divided decision, held that the conviction for armed robbery could not stand in light of the holding of this Court in *Young v. State*, 487 S.W.2d 305 (Tenn.1972).

Accordingly the conviction on the charge of armed robbery was reversed and dis-

missed, with one member of the Court dissenting. The majority of the Court of Criminal Appeals felt that from the uncontroverted proof in the record, respondent and his companion did not intend permanently to deprive the owner of the truck of his property. Respondent testified that he only intended to use the truck as a means to make his escape, and as evidence of this intent pointed out that the truck was abandoned later in the day.

■ Although an intent to deprive the owner of property is a necessary element of larceny, this intent frequently can be established by circumstantial evidence. Further, in the case of a motor vehicle, the Criminal Code expressly makes it a felony for any person to take such a vehicle without the owner's consent, even though "merely intending to use the same without such owner's consent temporarily and thereafter either abandon such vehicle or return the same to the owner." T.C.A. § 59–504. Violation of the section is made punishable by imprisonment in the penitentiary for not less than one year nor more than five years.

Thus, by the respondent's own admission, and giving him the most favorable view of his own testimony, he had a felonious intent and indeed committed a felony when he and his companion commandeered the keys to the Park Supervisor's truck, confiscated the truck and drove it away. Further, there is no question but that his credibility was an issue in the case, and the jury were not bound to accept at face value his statement that there was no intent permanently to deprive the owner of it.

The statute under which respondent was convicted is codified as T.C.A. § 39–3901 as follows:

"Robbery is the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear. Every person convicted of the crime of robbery shall be imprisoned in the penitentiary not less than five (5) nor more than fifteen (15) years; provided, that if the robbery be accomplished by the use of a deadly weapon the punishment shall be imprisonment for life or for any period of time not less than ten (10) years." [1]

■ As pointed out in the dissenting opinion in this case, robbery is considered to be aggravated larceny, *State v. Winsett,* 217 Tenn. 564, 567, 399 S.W.2d 741 (1965). The intent of one charged with a criminal offense is a matter to be determined from all of the facts and circumstances. *Hall v. State,* 490 S.W.2d 495 (Tenn.1973).

Since the record clearly supports the conviction for both offenses, as an evidentiary proposition, the legal question is still presented as to whether or not the conviction for armed robbery can stand in the light of *Young v. State, supra.*

In that case the defendant was a prisoner in the Hamblen County Jail. His cell door was unlocked by a deputy sheriff in order to put another prisoner into the cell. Defendant pointed a loaded pistol at the deputy, and he and a cell mate stepped outside the cell. Defendant's companion took the officer's set of keys, ordered the officer into the cell, and then locked the cell door with the confiscated keys. Defendant and his companion fled, and discarded the keys in a field adjoining the jail. Defendant was convicted of both felonious escape and armed robbery, but this Court held that the evidence preponderated against the finding in connection with the latter charge. The Court held that there was insufficient evidence of an intent separate and apart from the offense of escaping from jail.

1. This is the present wording of the statute. At the time of the trial below the last clause was:

"provided that if the robbery be accomplished by the use of a deadly weapon the punishment shall be death by electrocution, or the jury may commute the punishment to imprisonment for life or for any period of time not less than ten (10) years."

The State contended that there was evidence of separate and distinct offenses and that separate evidence would have been necessary to convict on the two charges. *Dowdy v. State*, 158 Tenn. 364, 13 S.W.2d 794 (1928).

In reversing, this Court said:

"To accept the State's argument would require us to ignore the fact that the record contains no basis for the idea that defendant intended to steal the set of keys. After thoroughly reviewing the record we are convinced that defendant's only intent was to escape and the taking of the keys was done only for the purpose of delaying pursuit by the Hamblen County police officials. In other words, there was only a single continuous intent to escape. Robbery requires an intent to steal the property of the owner. The proof of such intent is lacking in the record." 487 S.W.2d at 307–308.

This Court is not inclined to extend the holding in the *Young* case, *supra*, and this holding should be confined to its particular facts. Probably it can be distinguished factually from the present case where the accused obviously did more than merely retard pursuit. We do not find it necessary to overrule *Young*, but we are persuaded that to extend it beyond its precise facts would be contrary to the public interest. To permit its application in this case would permit the felonious confiscation of the personal property of others, under threat of deadly force, to go unpunished under the guise that there was no "separate intent" except to use that property as a part of an intent to escape, or as a part of one "continuous transaction."

This Court is not prepared to sanction any such principle as part of the criminal law of this state.

In the case of *Duchac v. State*, 505 S.W.2d 237 (Tenn.1973), this Court re-examined the question of when there might be separate convictions on criminal charges.

Discussing the earlier authorities from the state, the Court held that the test is not whether the offenses involve the "same transaction" but rather whether the same evidence was required to prove both of them. Quoting from earlier cases, the Court approved the following statement:

"If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes. 'If there was one act, one intent and one volition, and the defendant has been tried on a charge based on that act, intent, and volition, no subsequent charge can be based thereon, but there is no identity of offenses if on the trial of one offense proof of some fact is required that is not necessary to be proved in the trial of the other, although some of the same acts may necessarily be proved in the trial of each.'" 505 S.W.2d at 239.

■ We adhere to this principle, and we are of the opinion that the evidence in the present case justifies the conviction on the charge both of escape and of armed robbery.

The judgment of the Court of Criminal Appeals is reversed insofar as it dismissed the charges of armed robbery. The judgment of the trial court is reinstated as to both charges for which respondent was convicted. Costs are adjudged against respondent.

FONES, C. J., and COOPER and BROCK, JJ., concur.

HENRY, J., dissents.

HENRY, Justice (dissenting).

I respectfully dissent from the views of my brothers. I would affirm the judgment of the Court of Criminal Appeals.

Scates was motivated by one purpose, intent, aim or objective, viz freedom from

incarceration. The taking of the truck was for the sole purpose of effectuating his escape.

I find no fault with the decision of this Court in *Young v. State,* 487 S.W.2d 305 (Tenn.1972). To the contrary I regard it as being supported by reason, logic and, above all, fairness. The Court held that the public policy of the state precluded the imposition of two convictions and two punishments arising out of a single transaction.

The majority reaffirms *Duchac v. State,* 505 S.W.2d 237 (Tenn.1973). In *State v. John Edward Black,* 524 S.W.2d 913 (1975), (opinion released June 16, 1975), the same majority admits that "(i)t is also somewhat difficult to agree with the actual result reached in the *Duchac* case . . .". The actual result reached was that Duchac was convicted of burglary and of the possession of the tools of the burglary, a lesser included offense. I find it impossible to agree with or justify *Duchac* and yet it is again being applied to convict twice for a single offense.

I would apply the standards set forth in the American Law Institute's Model Penal Code as follows:

When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

(a) one offense is included in the other; or

(b) One offense consists only of a conspiracy or other form of preparation to commit the other;[1] or

(c) inconsistent findings of facts are required to establish the commission of the offenses; or

(d) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(e) the offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

All charges grew out of the same transaction. The vehicle was taken in furtherance or preparation of the escape. He was motivated by a single continuing intent.

My dissent in *Black, supra,* will shed additional light upon this dissent.

---

1. As pointed out in the comment under Sec. 1.08 (now 1.07) of the Code, "the limitation of the draft is confined to the situation where the completed offense was the sole criminal objective of the conspiracy. Therefore, there may be conviction of such a conspiracy if the prosecution shows that the objective of the conspiracy was the commission of additional offenses."