# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 22, 2005

## STATE OF TENNESSEE v. BILLY R. SHELLEY

### Appeal from the Criminal Court for Sullivan County
### No. S46, 826     Phyllis H. Miller, Judge

---

### No. E2004-00145-CCA-R3-CD - Filed July 29, 2005

---

The Appellant, Billy R. Shelley, was convicted by a Sullivan County jury of theft of property over $1,000, a class D felony, and sentenced as a Range II multiple offender to eight years in the Department of Correction. On appeal, Shelley raises the following issues for our review: (1) whether the evidence was sufficient to support the verdict; (2) whether the trial court erred in ruling that his prior convictions, which expired more than ten years prior to this prosecution, were admissible for impeachment purposes; and (3) whether his sentence was proper. After a review of the record, the judgment of the Sullivan County Criminal Court is affirmed.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Steve McEwen (on appeal), Mountain City, Tennessee; and Richard Tate (at trial), Assistant Public Defender, Blountville, Tennessee, for the Appellant, Billy R. Shelley.

Paul G. Summers, Attorney General and Reporter; William G. Lamberth II, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and William B. Harper, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On November 15, 2002, Larry Hammonds, Jr. was living in a mobile home located at 390 Barnett Drive in Kingsport. At approximately 5:30 a.m., he went outside and started his recently purchased 1991 Mazda 626 to clear the windows of frost and ice. He left the car running and went back inside his mobile home. Inside only ten to fifteen seconds, Hammonds heard a "thud." At trial Hammonds testified:

It sounded like a door closed. Didn't know what it was. I went to the front bedroom, seen somebody in front of the trailer. Went out the side door, went over, and I seen Billy Ray Shelley getting into my car. And I was - - by the time he was at my car, he had his hand upon the door, I was in front of my girlfriend's car and he just getting in and got it in drive. He hit the front of my trailer, the tongue . . . then stuck it in reverse.

He described the person who stole his car as having long brown hair and wearing a black leather jacket and testified that he saw the side of the person's face. Hammonds' porch light and that of a neighbor provided the only lighting. At trial, Hammonds testified that he had lived at the mobile home park for two weeks prior to the incident and that he had seen the Appellant several times and knew that the Appellant lived in a neighboring trailer but did not know the Appellant's name. Hammonds stated that the Appellant ran into a couch sitting in his own driveway and drug it a distance before backing into a meter and running over some cinder blocks. He also testified that he tried to chase the car on foot, and, when this attempt failed, he called 911 on his cell phone.

Soon thereafter Officer Jeff Sluss with the Kingsport Police Department arrived at the scene. As Officer Sluss sat in his patrol car talking to Hammonds, a man in a black leather jacket with long brown hair approached. Hammonds alerted the officer "this is the guy that stole my car" and saw the man drop something on the pavement. The Appellant approached the police car and asked what was going on. Officer Sluss told the Appellant to go to his residence and that they would talk in a few minutes. He then told Hammonds to retrieve what the Appellant had dropped, and Hammonds verified that the item was his car keys. Officer Sluss transported Hammonds to a vehicle he had seen on his way to the mobile home community, which was parked at the dead end of Barnett Drive, less than one mile way. Hammonds identified the car as belonging to him.

On October 16, 2002, the Appellant was indicted for theft of property over $1,000. After a trial by jury, the Appellant was found guilty as indicted on November 6, 2003. On December 19, 2003, he was sentenced to eight years in the Department of Correction as a Range II multiple offender. This appeal followed.

**Analysis**

As a preliminary matter, we note that the record fails to include a motion for new trial and an order overruling the motion for new trial.[1] Tennessee Rule of Appellate Procedure 3(e) states in pertinent part that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Due to the failure to file a motion for new trial, the Appellant has waived the following evidentiary issue: whether the trial

---

[1] A footnote to the Appellant's brief states that no motion for new trial was filed by Appellant's trial counsel although a timely notice of appeal was filed. Appellate counsel states he was appointed after "trial counsel apparently retired from law practice."

court erred in ruling that his prior convictions expiring more than ten years prior to this prosecution were admissible for impeachment purposes.[2] We decline plain error review of this issue because it does not rise to the level of affecting a substantial right which would necessitate review in order to do substantial justice. *See* Tenn. R. Crim. P. 52(b); *see also State v. Michael Woods*, No. W2003-02762-CCA-R3-CD (Tenn. Crim. App. at Jackson, Feb. 17, 2005, (review of prior convictions for impeachment purposes did not rise to level of plain error review as issue did not affect a substantial right as required by Tenn. R. Crim. P. 52(b)).

## I. Sufficiency of the Evidence

The Appellant contends that the evidence was insufficient to support his conviction for theft of property over $1,000. Specifically, he argues that Hammonds' identification was flawed and that his testimony was inconsistent. The Appellant challenges Hammonds' credibility with the following rationale:

> Hammonds had only lived in the trailer park for two (2) weeks, and had never socialized with the appellant. It appears that Hammonds based his identification almost entirely upon his brief observation that the subject had long hair and was wearing a black leather coat. . . .

> It was dark when the incident occurred, without much illumination. Hammonds did not have a frontal view of the subject.

> At trial, Hammonds testified that he had a "split-second" view of the side of the subject's face. Assuming this was true, a "split-second" view of the side of someone's face in the dark is woefully inadequate and insufficient upon which to base a positive identification of the person.

> However, the proof further demonstrated that at the preliminary hearing Hammonds testified that he did not see the subject's face. . . .

> . . . .

> . . . Hammonds was the only party that actually observed the keys on the road. Officer Sluss did not go with Hammonds to retrieve the alleged keys. Additionally, there was no evidence that Officer Sluss took possession of the keys to positively identify that the key would start the subject vehicle.

---

[2]The trial court ruled that the Appellant's two burglary convictions and an aggravated robbery conviction were admissible for purposes of impeachment. The Appellant challenges only the admission of the two burglary convictions upon grounds that the probative value of the convictions is substantially outweighed by their prejudicial effect. The Appellant concedes admissibility within the ten-year rule, as the convictions occurred within ten years between the Appellant's release from confinement and his arrest for the instant offense. *See* Tenn. R. Evid. 609(b).

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after reviewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). These rules are applicable to findings of guilty predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). As in the case of direct evidence, the weight to be given circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citation omitted).

Tennessee Code Annotated section 39-14-103 (2003) provides, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." The Appellant's sufficiency argument is hinged completely upon his assertion that the victim lacks credibility. The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. *See State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Inconsistency, inaccuracy, and omissions in the description of a defendant by a witness who is otherwise able to positively identify the defendant are questions for the jury to consider in determining the weight to be given the testimony. *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). Further, although inconsistencies or inaccuracies may make the witness less credible, the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the Appellant's guilt. *Id.* The jury's verdict in this case is supported by the evidence. The positive identification testimony of Larry Hammonds, Jr. sufficiently supports the Appellant's conviction. Though inconsistencies are apparent, Hammonds' testimony is not so improbable or unsatisfactory as to create a reasonable doubt of the Appellant's guilt.

Additionally, the Appellant contends that should this court find the evidence sufficient to conclude that he took Hammonds' vehicle, we should conclude that "the proof was merely sufficient to support a guilty verdict for the lesser included offense of unauthorized use of automobiles or other vehicles (joyriding)." He maintains that the car was located less than one mile from Hammonds' home and returned to the owner within one hour of being taken. Although the necessary element of intent to deprive the owner of property was not proven by direct evidence at trial, circumstantial evidence can establish such intent. *See State v. Scates*, 524 S.W.2d 929, 931 (Tenn. 1975). Moreover, a "jury may infer a criminal defendant's intent from the surrounding facts and circumstances." *State v. Roberts*, 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996). Notwithstanding the fact that the vehicle was abandoned less than one mile away from where it was taken and quickly

recovered by its owner, a reasonable jury could conclude that the Appellant intended to deprive Hammonds of his property regardless of the amount of time involved. *See State v. James Stanley Beckman*, M2002-00401-CCA-R3-CD (Tenn. Crim. App. at Nashville, June 30, 2003); *State v. Marvin D. Brown*, M2000-00388-CCA-R3-CD (Tenn. Crim. App. at Nashville, Apr. 16, 2001). The trial court instructed the jury on the lesser-included offense of joyriding, but the jury concluded that the Appellant was guilty of theft of property over $1,000. We find no reason to disturb the jury's verdict.

## II. Sentencing

Next, the Appellant challenges two aspects of his sentencing. First, he argues that the trial court erred in imposing a sentence of eight years, the maximum for this conviction. Second, he contends that the trial court erred in its denial of alternative sentencing.

### A. Length of Sentence

The Appellant argues that the trial court's imposition of enhancing factors, which resulted in the maximum sentence of eight years, as a Range II offender, for his Class D felony conviction violated *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004).[3] First, we note that this issue is waived because it was not raised by the Appellant at the sentencing hearing. *See State v. Edwin Gomez and Jonathan S. Londono*, M2002-01209-SC-R11-CD (Tenn. Apr. 15, 2005). Moreover, our Supreme Court held in *Gomez* that the Sentencing Reform Act of 1989 does not violate the Sixth Amendment guarantee of a jury trial and was not affected by the *Blakely* decision. *Id.* Accordingly, this issue is without merit.

### B. Denial of Alternative Sentencing

The Appellant also contends that the trial court erred by failing to grant him alternative sentencing. Specifically, he argues that the trial court should have imposed a community corrections sentence due to his "serious drug and alcohol addiction." The State argues that the Appellant's extensive criminal history and his past uncooperativeness with sentences involving release into the community justify the manner of sentence imposed by the trial court. We agree with the State.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence,

---

[3]The Appellant presents no challenge to his enhanced sentence under the 1989 Sentencing Act. The sentencing range, as a Range II offender for a class D felony, is four to eight years. Tenn. Code Ann. § 40-35-112(a)(2) (2003).

this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168. The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401(d).

The Community Corrections Act permits trial courts to sentence certain nonviolent felony offenders, who are either not eligible for probation or not good candidates for probation, to participate in community-based alternatives to incarceration. *State v. Grigsby*, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997). A community corrections sentence provides a desired degree of flexibility that may be beneficial to the offender, yet serve legitimate societal purposes. *State v. Griffith*, 787 S.W.2d 340, 342 (Tenn. 1990). A sentence under the Community Corrections Act is an alternative sentence. *Grigsby*, 957 S.W.2d at 544 (citing *State v. Taylor*, 744 S.W.2d 919, 920 (Tenn. Crim. App. 1987)). As a Range II multiple offender, the Appellant is not presumed a favorable candidate for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6). Our code provides that a trial court should impose a sentence of confinement if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). In this case, the trial court found that the Appellant had little potential for rehabilitation due to his extensive criminal history and his previous unwillingness to comply with the conditions of a sentence involving release into the community.

The presentence report indicates that the Appellant has forty-one prior convictions for felony and misdemeanor crimes, including felony convictions for aggravated robbery, third degree burglary, first degree burglary, as well as convictions for drug and alcohol offenses, theft, assault, disorderly conduct, criminal trespass, and traffic offenses. The report also indicates that efforts at rehabilitation in the past have failed, as the Appellant has previously violated probation and parole. Accordingly, the Appellant has failed to carry his burden of demonstrating that the sentence imposed by the trial court was improper.

## CONCLUSION

Based upon the foregoing, the judgment of conviction and resulting sentence of the Sullivan County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE