IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 1, 2015


**STATE OF TENNESSEE v. DOUG HAROLD MORRISON**


**Appeal from the Circuit Court for Marion County**
**No. 9543     J. Curtis Smith, Judge**

_____


**No. M2014-00762-CCA-R3-CD – Filed March 4, 2016**

_____


Following a jury trial, Doug Harold Morrison ("the Defendant") was convicted of theft of property valued at $1,000 or more but less than $10,000. On appeal, the Defendant argues that the trial court erred when it failed to instruct the jury as to the lesser included offense of attempted theft of property. Discerning no error, we affirm the judgment of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**


ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.


B. Jeffery Harmon, District Public Defender; and Norman Lipton, Assistant District Public Defender, Jasper, Tennessee, for the appellant, Doug Harold Morrison.


Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Michael Taylor, District Attorney General; and David McGovern, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**I. Factual and Procedural Background**

The Defendant was indicted with one count of theft of property valued at $1,000 or more but less than $10,000, one count of driving under the influence, one count of driving on a suspended or revoked license, and one count of driving on a suspended or revoked license (second offense). The theft charge was severed from the other charges for the trial.

At trial, Scott Terry testified that he was employed in asset protection at Walmart in Marion County. On May 2, 2013, several Walmart employees informed Mr. Terry that "spider wires" had been cut off of store merchandise, indicating items had been stolen. Mr. Terry explained that spider wires were security devices that were placed on higher-priced items. The spider wires were designed so that they could not be slipped off of the merchandise packaging but had to be removed by a cashier with a specific key upon purchase of the item. If the wires were cut, an alarm would sound.

Upon receiving the cut spider wires, Mr. Terry reviewed the Walmart security footage for that day. The footage showed a male with a hat and glasses enter the store around 4:15 p.m. The man placed an LED television and a sound bar in his shopping cart and then proceeded to the hardware department of the store, where the cut spider wires were found. The male then left the hardware department and exited the store without paying for the items. The man loaded the items into his truck. The footage showed that there were no spider wires on the items when the man left the store.

At 7:25 p.m., the footage showed the same man go to the electronics section of the store and place a Vizio television into his shopping cart. The man then went to the apparel section of the store. A short time later, the man exited the apparel section with the television, now missing its spider wires. The man left the store with the television without paying for the item and loaded it into his truck.

Around 9:00 or 9:30 p.m., Mr. Terry finished work and walked to the parking lot to meet his girlfriend. His girlfriend informed Mr. Terry that she needed some items from the store, so Mr. Terry went back inside Walmart to purchase items for his girlfriend and a keyboard for himself. While Mr. Terry was selecting a keyboard, a man passed by him with the same demeanor and complexion as the man Mr. Terry had seen in the security footage from earlier in the day. Mr. Terry watched the man, later identified as the Defendant, place an LG surround sound system with spider wires into his shopping cart and proceed to the apparel section of the store. Mr. Terry followed the Defendant to the apparel section, where he observed the Defendant remove the spider wires from the merchandise and place the cut wires behind a t-shirt display on the wall. Mr. Terry stated that he did not see the Defendant cut the wires, but he saw him remove the wires from the item, and he could hear the alarm from the cut spider wires. Mr. Terry then followed as the Defendant left the store without paying for the sound system, and he observed the Defendant "flash" a receipt as he walked through the door. Mr. Terry explained that Walmart's policy was to allow suspected shoplifters to exit the building before being approached by a store employee in order to give the individual "every possibility to pay for the merchandise."

Mr. Terry followed the Defendant outside the building and approached him in the parking lot. There, Mr. Terry informed the Defendant that he was a Walmart employee

and asked the Defendant to come back into the store. The Defendant did not stop, so Mr. Terry took physical control of the shopping cart and pushed it back inside the store. The Defendant followed Mr. Terry and tried to show Mr. Terry a receipt. Mr. Terry told him that the receipt would not be necessary because he had seen the Defendant cut the spider wires from of the sound system. The Defendant then told Mr. Terry that he had the money to pay for the item, but Mr. Terry informed the Defendant "that wouldn't be an option right now." The Defendant also suggested that he could give back the item and leave, but Mr. Terry refused that offer as well. Mr. Terry then took the Defendant to the service desk, where the Defendant was turned over to Officer Tim Hudson of the Kimball Police Department who had responded to Walmart's call about a theft. Mr. Terry also retrieved the cut spider wires from behind the t-shirts and gave them Officer Hudson. A pair of wire cutters was discovered on the Defendant's person. Mr. Terry testified that the total value of the stolen merchandise from the three episodes was $1,249.

On cross-examination, Mr. Terry admitted that he lost sight of the Defendant for a few seconds while he was following him through the store. In total, Mr. Terry estimated that the Defendant was out of sight for approximately thirty seconds. Mr. Terry also acknowledged that the security photo was a bit "pixilated." Mr. Terry also explained that he did not look at the receipt the Defendant tried to show to him because he had seen the Defendant remove the spider wires from the merchandise.

Officer Tim Hudson testified that he responded to a call about a theft at Walmart and met with Mr. Terry and the Defendant. Officer Hudson took the receipt that the Defendant had with him but did not read the writing on it. However, Officer Hudson explained that he could tell by the color of the receipt that it was an old receipt. Officer Hudson also retrieved a pair of wire cutters from the Defendant's pocket. Officer Hudson located the Defendant's truck and noted that it matched the truck seen in the security footage. On cross-examination, Officer Hudson stated that the surround sound system taken during the third episode was returned to Walmart, but he did not know what happened to the merchandise taken during the other episodes. Regarding the surround sound system taken during the third episode, Officer Hudson stated, "[The Defendant] never got away with it completely. He was shoplifting it. He was stealing it, caught in the act of stealing it." Later, Officer Hudson clarified, "[The Defendant] left a point of sale without paying for it, but he was apprehended."

The jury convicted the Defendant of theft of property valued at $1,000 or more but less than $10,000. The Defendant was sentenced to eight years' incarceration. The Defendant filed a timely motion for new trial and a subsequent amended motion for new trial, asserting that the trial court erred when it failed to instruct the jury as to attempted theft. The trial court denied the motion, and this timely appeal followed.

## II. Analysis

On appeal, the Defendant argues that the trial court erred when it did not instruct the jury as to attempted theft because the Defendant never left Walmart's property with the LG surround sound system.  The State argues that the jury was properly instructed because the items stolen during the first two episodes were never found and because the evidence showed that Defendant's theft of the surround sound system was completed by the time he was stopped.

"For all trials conducted on or after January 1, 2002, the defendant must file a written request for an instruction on a lesser-included offense as a prerequisite to taking issue on appeal with the failure to give an instruction on the offense."  State v. Banks, 271 S.W.3d 90, 126 (Tenn. 2008) (citing Tenn. Code Ann. § 40-18-110(c)).  Failure to submit a written request will result in waiver of the issue on appeal.  Id.  However, because criminal defendants have a constitutional right to a correct and complete charge of the law applicable to their case, this court may review the instructions to determine whether the defendant is entitled to relief under plain error review.  Id. (citing State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006)).

This court will grant relief under plain error review only when five prerequisites are met: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.  State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (adopting the factors set out in State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  The defendant bears the burden of demonstrating that the trial court committed plain error.  State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007).  Further, "consideration of all five factors is not necessary when it is clear from the record that at least one of them cannot be satisfied."  Id. (citing Smith, 24 S.W.3d at 283).

When addressing whether a trial court erred in failing to instruct the jury on a lesser included offense, this court considers the following three questions: (1) whether the offense is a lesser included offense; (2) whether the evidence supports a lesser included offense instruction; and (3) whether the failure to give the instruction is harmless error.  Banks, 271 S.W.3d at 124 (citing State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002)).

As relevant here, "An offense is a lesser included offense if: (1) [a]ll of its statutory elements are included within the statutory elements of the offense charged; [or] . . . (3) [t]he offense is attempt of the offense charged or of an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1)[.]"  Tenn. Code Ann.

§ 40-18-110(f)(1), (3) (Supp. 2012). Accordingly, attempted theft is a lesser included offense of theft of property. <u>See</u> Tenn. Code Ann. § 40-18-110(f)(3) (Supp. 2012).

Tennessee Code Annotated section 39-12-101(a) states:

A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tennessee Code Annotated section 40-18-110(a) provides the standard for determining whether the evidence is sufficient to require an instruction on a lesser included offense, stating:

. . . [T]he trial judge shall not instruct the jury as to any lesser included offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of evidence. The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

However, our supreme court has stated that instructions as to the lesser included offenses of facilitation, attempt, and solicitation are not necessary "where the evidence clearly establishes completion of the criminal act or simply does not involve proof of solicitation or facilitation." <u>Banks</u>, 271 S.W.3d at 125 (footnote omitted); <u>see also Allen</u>, 69 S.W.3d at 188 (stating that proof of the greater offense will not necessarily prove a lesser included offense of facilitation, attempt, or solicitation); <u>State v. Ely</u>, 48 S.W.3d 710, 719 (Tenn. 2001).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a) (Supp. 2013). The theft is complete when the defendant has possession or control of the property and evidences his intent to deprive the owner of the property. See State v. Swift, 308 S.W.3d 827, 831 (Tenn. 2010); State v. Antonio Crenshaw, No. W2014-01367-CCA-R3-CD, 2015 WL 2447717, at *5 (Tenn. Crim. App. May 22, 2015), perm. app. denied (Tenn. Sept. 18, 2015). "[I]ntent [to deprive the owner of property] frequently can be established by circumstantial evidence." State v. Scates, 524 S.W.2d 929, 931 (Tenn. 1975). Such intent may be evidenced by the defendant's removing the item from its packaging or concealing the item on his or her person, see Swift, 308 S.W.3d at 831, or by the defendant's removing the property from the confines of the store without paying for the property. See State v. Owens, 20 S.W.3d 634, 641 (Tenn. 2000). Once the defendant leaves the store with the property, the defendant's distance from the store at the point of apprehension is irrelevant to determine whether the theft was completed. State v. Frederick Lamar Dixon, No. W2000-00577-CCA-R3-CD, 2001 WL 278092, at *3 (Tenn. Crim. App. Mar. 19, 2001). Tampering with or disabling a security device or possessing tools, such as wire cutters, after a security device has been removed, can also constitute circumstantial evidence of intent to deprive the owner of property, as well as a separate offense under Tenn. Code Ann. § 39-14-703 (2010).

Initially, we note that there is nothing in the record to indicate that the Defendant filed a written request for an instruction on attempt. As such, he has waived the issue for appeal, and we will review his claim for plain error. Banks, 271 S.W.3d at 126.

The Defendant makes no argument that the jury should have been instructed on attempt for the first two episodes, wherein two televisions and a sound bar were taken from Walmart. These items were never returned to the store, and it is clear that the act of theft was completed as to those items. Additionally, the evidence shows that the Defendant's theft of the LG surround sound system, taken during the third episode, was completed because the Defendant left the confines of the store without paying for the surround sound system. Owens, 20 S.W.3d at 641; see also Johnson, 366 S.W.3d at 157 ("In Owens, although not specifically addressed, the taking was obviously complete no later than when the defendant exited the store with the merchandise"). The Defendant correctly notes that he was stopped before leaving Walmart's parking lot. However, whether he left Walmart's parking lot was irrelevant. See Frederick Lamar Dixon, 2001 WL 278092, at *3. Accordingly, the evidence at trial showed that all three episodes of theft were completed and did not support an inference of guilt on the lesser included offense of attempted theft. Therefore, the Defendant has failed to show that a clear and unequivocal rule of law was breached or that one of his substantial rights was adversely affected, and he is not entitled to plain error relief.

- 6 -

## III. Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE