IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 5, 2019

**STATE OF TENNESSEE v. GERMAINE MARKQUES LONG**

**Appeal from the Circuit Court for Madison County**
**No. 17-264    Roy B. Morgan, Judge**

**No. W2018-01203-CCA-R3-CD**

The Defendant, Germaine Markques Long, was found guilty by a Madison County Circuit Court jury of two counts of identity theft, a Class D felony, and theft of property valued at $1000 or less, a Class A misdemeanor. *See* T.C.A. §§ 39-14-150 (2018) (identity theft); 39-14-103 (2018) (theft); 39-14-105 (2018) (grading of theft).  The trial court sentenced the Defendant as a Range I, standard offender to concurrent terms of four years for each identity theft conviction and eleven months, twenty-nine days for the misdemeanor theft conviction.  On appeal, the Defendant contends that (1) the evidence is insufficient to support his convictions and (2) the trial court erred by denying his motion for a mistrial.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined.

George Morton Googe, District Public Defender; and Jeremy B. Epperson, Assistant District Public Defender, for the appellant, Germaine Markques Long.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General;  Jody Pickens, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's convictions relate to the January 8, 2017 theft of Garey Littrell's wallet.  At the trial, Mr. Littrell testified that he was age seventy-two at the time of the trial and that he owned rental properties in the Jackson area.  He said that on January 8, 2017, he could not find his wallet, although it had been inside his truck.  He said that he last saw the wallet inside his truck approximately two hours before it disappeared.  He said that he called

Discover Financial Services (Discover), with whom he had a credit card account, to report his missing credit card and that he met with Jackson Police Sergeant Brian Spencer. Mr. Littrell recalled that he had about $400 inside his wallet.

Mr. Littrell testified that, at the time of the incident, the Defendant was a tenant and worked as a property manager for Mr. Littrell. He said that he did not give the Defendant permission to take his wallet from his truck and that he did not give the Defendant permission to use his credit card at a convenience store and at a Walmart. Mr. Littrell identified the Defendant from photographs, which were received as an exhibit.

On cross-examination, Mr. Littrell testified that, at the time of the incident, his truck would have been parked at "the work site" or at the rental property the Defendant managed for Mr. Littrell. Mr. Littrell said that he paid the Defendant in cash daily. Mr. Littrell denied that he had previously given the credit card to the Defendant to purchase gas for Mr. Littrell's truck.

Jackson Police Sergeant Brian Spencer testified that after Mr. Littrell learned from Discover that his credit card had been used on January 8 three times at a convenience store and once at a Walmart, Sergeant Spencer went to the convenience store where the three transactions occurred. Sergeant Spencer said that a store clerk retrieved the relevant transaction information and the corresponding receipts to each transaction. The receipts were received as an exhibit and reflected that on January 8, three purchases were made at the store with a card number ending in the same last four digits as Mr. Littrell's Discover credit card and that the purchases totaled $5.43, $50.00, and $62.23. Sergeant Spencer said that he retrieved the store surveillance recording at the times of the transactions, that the recording showed the same person using the credit card, and that Mr. Littrell identified Defendant as the person in the recording. Sergeant Spencer identified the photographs previously received as an exhibit and said that he obtained all but one of the photographs from the store surveillance recording. He said that the last photograph was obtained from Walmart's surveillance recording.

Sergeant Spencer testified that he went to Walmart, that he obtained the surveillance recording from inside the store, and that he obtained a photograph of the person who used Mr. Littrell's Discover credit card. Sergeant Spencer said the photograph obtained from the surveillance recording showed the Defendant with a shopping cart containing two sixty-inch televisions and two PlayStation 4 game consoles.

Sergeant Spencer identified a January 5, 2018 notarized letter from Discover, which was received as an exhibit. The letter identified four transactions from January 8, 2017, that Mr. Littrell had reported as fraudulent. The letter stated that all four transactions were made between 11:32 a.m. and 12:31 p.m., that transactions for $62.23, $50.00, and $5.43 were

made at a convenience store, and that a transaction for $2,078.67 was made at Walmart. Sergeant Spencer said that the surveillance recording from the convenience store showed the transactions referenced in the letter.

The surveillance recordings from the convenience store and Walmart were played for the jury. From the convenience store surveillance recording, Sergeant Spencer identified the Defendant's vehicle entering the parking lot. Sergeant Spencer identified the three transactions in which Mr. Littrell's Discover credit card was used. Sergeant Spencer identified the Defendant as the person using the credit card. From Walmart's surveillance recording, Sergeant Spencer identified the Defendant in the electronics department walking in front of an employee, who assisted with two televisions. Sergeant Spencer said that the Defendant purchased the televisions and two PlayStation 4 game consoles with Mr. Littrell's Discover credit card and that the time of the transaction corresponded to the time identified in the letter from Discover.

Janith Littrell, Mr. Littrell's wife, testified that she met the Defendant about two weeks before the incident in this case. She identified the photographs previously received as an exhibit and stated that each photograph depicted the Defendant.

Upon this evidence, the Defendant was convicted of two counts of identity theft and misdemeanor theft. This appeal followed.

## I.     Sufficiency of the Evidence

The Defendant contends, without specificity, that the evidence is insufficient to support his convictions. The State responds that the evidence is sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see also State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether

the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

## A.    Theft of Property

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). The evidence must show that a defendant "knowingly obtained or exercised control over" the property, "did not have the owner's effective consent," and "intended to deprive the owner of the property." *State v. Amanns*, 2 S.W.3d 241, 244-45 (Tenn. Crim. App. 1999). An owner is deprived of property when a defendant "withholds property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." T.C.A. § 39-11-106(a)(8)(A) (2012). The intent to deprive may be based solely upon circumstantial evidence, and a "jury may infer a . . . defendant's intent from the surrounding facts and circumstances." *State v. Roberts,* 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996); *see State v. Scates,* 524 S.W.2d 929, 931 (Tenn. 1975).

In the light most favorable to the State, the record reflects that on January 8, 2017, Mr. Littrell could not find his wallet, which he had placed inside his truck. Mr. Littrell reported this to Discover and to the police. Mr. Littrell's Discover credit card was used four times on January 8, and he did not give the Defendant permission to take and to use the credit card. Surveillance recordings at the convenience store and at Walmart show the Defendant purchasing items with a credit card, and the transaction information from each purchase reflect that Mr. Littrell's credit card was used for payment. Likewise, approximately $400 was inside Mr. Littrell's wallet. Therefore, the evidence is sufficient to support the theft conviction, and the Defendant is not entitled to relief on this basis.

## B.    Identity Theft

Tennessee Code Annotated section 39-14-150(b)(1) states, in relevant part, "A person commits the offense of identity theft who knowingly obtains, possesses, buys, or uses, the personal identifying information of another . . . [w]ith the intent to commit any unlawful act including, but not limited to, obtaining or attempting to obtain . . . goods . . . in the name of such other person" without the consent of the other person. Personal identifying information includes, in relevant part, the following: "Name, social security number, date of birth, official state or government issued driver license[,] . . . [u]nique electronic identification number, address, routing code or other personal identifying data which enables an individual to obtain merchandise or service[.]" *Id*. § 39-14-150(e).

In the light most favorable to the State, the record reflects that Mr. Littrell did not give the Defendant permission to use the Discover credit card. Sergeant Spencer obtained the transaction information related to the three purchases at the convenience store and to the single purchase at Walmart. The surveillance recording showed the Defendant making the four purchases. The transaction information showed that the last four digits of the credit card used by the Defendant were identical to the last four digits of Mr. Littrell's Discover credit card. Additionally, the time and amount of the transactions were identical to the information reported by Discover. A reasonable jury could have found beyond a reasonable doubt that the credit card used by the Defendant belonged to Mr. Littrell and that the Defendant used the card and its identifying information to obtain goods without Mr. Littrell's consent. The evidence is sufficient to support the Defendant's convictions, and he is not entitled to relief on this basis.

## II.    Motion for a Mistrial

The Defendant contends that the trial court erred by denying his motion for a mistrial after the Defendant disrupted jury selection by making comments about his willingness to forego a trial and to accept sentencing. The State responds that the court did not err by denying the request for a mistrial. We agree with the State.

A trial judge should declare a mistrial if manifest necessity arises. *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). Manifest necessity occurs when "no feasible alternative to halting the proceedings" exists. *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981). "The granting or denial of a mistrial is within the sound discretion of the trial court." *State v. McKinney*, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996); *see State v. Jones*, 802 S.W.2d 221, 222 (Tenn. Crim. App. 1990). This court will only disturb that decision if the trial court abused its discretion. *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990).

During jury selection the following exchange occurred:

THE DEFENDANT:  Hey, Judge.  Judge.

THE COURT:  Just one moment.

THE DEFENDANT:  Just go on and lock me up, man.  Just go on and throw the book at me.  I'm ready to go.

THE COURT:  Mr. Long, just be quiet for a minute.  Let me do my paperwork.  I'll get right back with you, I promise.

THE DEFENDANT:  I'm gonna take whatever you want to give me.

-5-

THE COURT: Mr. Long, you've got to be quiet.

THE DEFENDANT: All right. It's my fault by showing out out here, the jury.
THE COURT: [Potential juror], you are excused. . . .

THE DEFENDANT: I apologize to everybody. I ain't no bad person.

The potential jurors were excused from the courtroom, and the trial court addressed the Defendant. The trial judge told the Defendant that he could not engage in "disruptive behavior," and the Defendant replied, "Yes, sir." The judge told the Defendant that if he disrupted the proceedings again, the judge had the authority to "excuse [the Defendant] from the courtroom" and to proceed with the trial in the Defendant's absence. The Defendant said he understood. The judge asked defense counsel what the Defendant said, and counsel reported that the Defendant had threatened counsel. The Defendant apologized and said, "I ain't mean it. It just, man, I don't even know why I said it. I know I threatened him. I don't even know why I did it. I should have waited [until] you got through." The judge accepted the Defendant's apology but warned that the Defendant would be removed from the courtroom if he disrupted the proceedings again. The judge instructed the Defendant not to threaten defense counsel, and the Defendant replied, "All right."

Before the prospective jurors returned to the courtroom, defense counsel requested a mistrial based upon the Defendant's comment for the trial court to "lock up" the Defendant. Counsel conceded that the State had not engaged in any wrongdoing. The prosecutor argued that the Defendant should not be permitted to cause a mistrial. The court denied the motion because the basis was the Defendant's own bad conduct. The court stated that if it granted the motion, "[a]ny defendant would just make such comments and cause a mistrial." The court said that although it was unsure whether the potential jurors heard the Defendant's statement, the court would provide a curative instruction if defense counsel desired. The court said it would instruct the venire to disregard the Defendant's comment and not to place any weight or consideration on the comment. Counsel requested the instruction, and the transcript reflects that the "jury was admonished to disregard comments made by the Defendant" and that jury selection was subsequently completed.

The record reflects that during jury selection, the Defendant told the trial court to lock him up and to throw the book at him, and the trial court quickly excused the potential jurors from the courtroom. The Defendant's statement was made before the jury was empaneled and was not elicited by anyone. The court determined that the Defendant's statement was an attempt to disrupt the proceedings and denied the motion on the basis that the Defendant should not benefit from his own disruptive behavior. The court, though, instructed all of the

potential jurors to disregard the Defendant's statement because it was not evidence to be considered during the trial. Furthermore, the proof of the Defendant's guilt was overwhelming based upon the surveillance recordings, transaction receipts, and credit card information. In view of the overwhelming evidence of the Defendant's guilt and the curative instruction given, the trial court did not abuse its discretion by denying the Defendant's request for a mistrial. He is not entitled to relief on this basis.

Based on the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE